1
2

Lori E. Andrus (SBN 205816)
lori@andrusanderson.com

3

Jennie Lee Anderson (SBN 203586)
jennie@andrusanderson.com

4

Paul Laprairie(SBN 312956)

5

paul.laprairie@andrusanderson.com

6

ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900

7

San Francisco, CA  94104
Telephone:  (415) 986-1400

8

Facsimile:   (415) 986-1474

9

*Attorneys for Plaintiff*

10

11

UNITED STATES DISTRICT COURT

12

FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

WESTERN DIVISION

14

15
16

JI-IN HOUCK, on behalf of herself and
all others similarly situated,

Case No.  2:17-cv-04595

17

Plaintiff,

**COMPLAINT – CLASS ACTION
AND COLLECTIVE ACTION**

18

vs.

**DEMAND FOR JURY TRIAL**

19

STEPTOE & JOHNSON LLP,

20

Defendant.

21

22

Statement regarding jurisdiction pursuant to Local Rule 8-1: This Court has

23

subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal

24

question) and 1332 (diversity of citizenship), and has supplemental jurisdiction

25

over the state law claims contained herein pursuant to 28 U.S.C. § 1367(a) given

26

that all of the claims are so related that they form part of the same case or

27

controversy under Article III of the United States Constitution.

28

//

1

On average, women are paid 80 cents for every dollar men performing the same work are paid.[1]  Women lawyers fare worse: on average they are paid only 78 cents for their male counterparts' dollar,[2] while those women who achieve equity partnership earn only 80 cents for every dollar male equity partners make.[3]

Despite paying lip-service to diversity in its workforce, and even counseling the firm's own clients on policies to avoid pay discrimination, Defendant Steptoe & Johnson LLP ("Defendant" or "Steptoe") subjects its female attorneys to unequal pay.  Plaintiff Ji-In Houck ("Plaintiff" or "Plaintiff Houck") seeks to remedy this disparity, at least at Steptoe.  She therefore brings this lawsuit in her individual capacity and on behalf of similarly-situated women nationwide, to address the systemic gender pay discrimination at Steptoe.

Given America's commitment to—in the words ascribed above the door of the United States Supreme Court—"Equal Justice Under Law," a legal profession in which women lawyers are openly valued less than their male peers threatens the very legitimacy with which the public views our country's laws, lawyers, judges, and the justice system itself.

//

---

[1] American Association of University Women, *The Simple Truth About the Gender Pay Gap: Spring 2017 Edition*, AAUW, 4 (2017), http://www.aauw.org/aauw_check/pdf_download/show_pdf.php?file=The-Simple-Truth.

[2] U.S. Dep't of Labor, *Median Weekly Earnings of Full-Time Wage and Salary Workers by Detailed Occupation and Sex*, Bureau of Labor Statistics (Feb. 8, 2017), https://www.bls.gov/cps/cpsaat39.htm.

[3] American Bar Association, Commission on Women in the Profession , *A Current Glance at Women in the Law* (Jan. 2017), https://www.americanbar.org/content/dam/aba/marketing/women/current_glance_statistics_january2017.pdf (last visited Jun. 22, 2017).  Findings on the gender gap in partner compensation vary.  One recent study found a gap in partner pay of 44%.  *See* Jeffrey Lowe, *2016 Partner Compensation Survey*, Major, Lindsey & Africa, 9 (Oct. 13, 2016), https://www.mlaglobal.com/publications/research/compensation-survey-2016.

CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff therefore alleges, upon knowledge as to herself, and otherwise upon information and belief, as follows:

## **INTRODUCTION**

1.      Steptoe & Johnson LLP[4] employs nearly 500 attorneys in offices across the country and around the world.

2.      Founded more than a century ago by Phillip Steptoe, and headquartered in Washington, D.C. since 1945, Steptoe enjoys a reputation as a "white shoe" firm of the highest caliber.

3.      The firm's history is steeped in military and government service.  One of the firm's founders, Colonel Louis Johnson, became Deputy Secretary of War under President Franklin D. Roosevelt.  Later, he was appointed as Secretary of Defense by President Harry Truman.

4.      The firm and its lawyers routinely receive top rankings in many practice areas by organizations such as *Chambers*, *Legal 500*, *The American Lawyer*, and *Best Lawyers*.[5]

5.      The firm enjoys a robust revenue stream: $356M in 2016.[6]

6.      Despite its reputation for excellence, and a century of success, Steptoe does not reward its female attorneys equally when compared to their male counterparts performing equal or substantially similar work.  Instead, Steptoe systematically pays female attorneys less than male attorneys.  Not only are

---

[4] Not to be confused with Steptoe & Johnson PLLC, which became an independent firm after separating the Washington and West Virginia offices in the 1980s.

[5] *Firm History*, Steptoe & Johnson LLP, http://www.steptoe.com/about-history.html, (last visited Jun. 19, 2017).

[6] Katelyn Polantz, *Slow Collections Drag on Growth at Steptoe*, The American Lawyer (Feb. 17, 2017), http://www.americanlawyer.com/id=1202779434097/Slow-Collections-Drag-on-Growth-at-Steptoe.  In 2016, revenue-per-lawyer was $955,000 and profits-per-partner were $940,000.  *Id.*

3

CLASS AND COLLECTIVE ACTION COMPLAINT

1 Steptoe's male attorneys paid more (in base salary and in bonuses), they are
2 routinely given higher profile work assignments, and are recognized for their
3 accomplishments, while female attorneys are not.  Additionally, Steptoe advances
4 the careers of its male attorneys more quickly than its female attorneys.

5       7.     On behalf of the Classes defined below, Plaintiff seeks all legal and
6 equitable relief available pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 201, *et*
7 *seq.*; the California Fair Pay Act, California Labor Code § 1197.5; and California
8 Business & Professions Code § 17200, *et seq.*

9 **PARTIES**

10       8.     Plaintiff Ji-In Houck (née Lee) resides in Northridge, County of Los
11 Angeles, California.  Plaintiff Houck worked at Steptoe's office in Century City.
12 Despite Ms. Houck's exemplary performance as an attorney, the firm discriminated
13 against her on account of her gender.

14       9.     Defendant Steptoe & Johnson LLP is a limited liability partnership
15 registered with the California Secretary of State.  Steptoe's principal place of
16 business is Washington, D.C., but Steptoe conducts business in multiple locations,
17 including in California, with offices in Los Angeles and Palo Alto.

18 **JURISDICTION AND VENUE**

19       10.     This Court has subject matter jurisdiction over this matter pursuant to
20 28 U.S.C. §§ 1331 and 1332.  This Court has supplemental jurisdiction over the
21 state law claims contained herein pursuant to 28 U.S.C. § 1367(a).

22       11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2)
23 because a substantial part of the events or omissions giving rise to Plaintiff's claims
24 occurred in this District.

25 //
26 //
27 //
28 //

4

CLASS AND COLLECTIVE ACTION COMPLAINT

**FACTUAL ALLEGATIONS**

**Plaintiff Houck's Experience at Steptoe**

12.     Plaintiff Houck attended Georgetown University Law Center, where she was an Editor on the Georgetown Journal on Poverty Law & Policy.[7]  After graduation in 2011, Plaintiff Houck passed the bar exam and was sworn into the California Bar later that same year.

13.     Plaintiff Houck joined Steptoe & Johnson on May 1, 2013, after having worked as a litigation associate for the previous two years.[8]

14.     Plaintiff Houck was initially given the title of "contract attorney," with an annual salary of $85,000.  She was told by the Century City Managing Partner that the firm would consider changing her title to "associate" after her first year at the firm.

15.     Curiously, Steptoe explained that while Plaintiff Houck would be identified as an "attorney" on all external correspondence and on the Firm's website, internally and on the Firm's intranet, she would be identified as an "associate."

16.     Apart from unequal pay, Plaintiff Houck otherwise received the same benefits provided to all associates.

17.     Plaintiff Houck immediately began doing the work of an associate: conducting legal research and analysis; drafting memos to partners and clients; drafting complaints and answers; preparing and responding to discovery; preparing and responding to motions (of all types, including dispositive motions and

---

[7] Plaintiff Houck was consistently an exceptional student.  In 2004, she graduated from University of Michigan with High Distinction, having maintained a grade point average of 3.85.

[8] Plaintiff Houck managed significant responsibilities at her first firm.  She ran cases on her own, argued motions, and took and/or defended approximately 50 depositions.

CLASS AND COLLECTIVE ACTION COMPLAINT

discovery motions); document review; document production; drafting deposition outlines and taking depositions; arguing motions; conducting client/witness interviews; drafting mediation and mandatory settlement conference briefs; attending mediations and mandatory settlement conferences; drafting settlement agreements; preparing for trial by, among other things, drafting opening statements, closing arguments, witness examinations, jury instructions, motions in limine, and preparing witnesses (lay and expert).

18.     Thus, with one glaring exception, there was virtually no distinction from Plaintiff Houck's job compared to the other associates at Steptoe: Plaintiff Houck's remuneration was *half* of others' doing the same work, including numerous male attorneys who were also admitted to the bar in 2011.  They were earning $165,000—almost *double* Plaintiff Houck's salary.

19.     Nevertheless, Plaintiff Houck quickly began shouldering advanced responsibilities, including second-chairing a state bench trial and a federal jury trial, and first-chairing a state criminal trial to verdict on her own as a volunteer prosecutor.[9]

20.     At the end of April, 2014, the Chair of Steptoe's Associates Committee informed Plaintiff Houck that her base salary would be increased to $100,000 (compared to her male counterparts' $175,000 salaries).

21.     Plaintiff Houck voiced her frustration to her Associate Deputy, using words to the effect that she "didn't understand how the firm can say she is worth so much less than the other associates."

---

[9] As always, Plaintiff Houck's performance was impeccable.  For example, the supervising attorney at the Los Angeles County City Attorney's Office assessed Plaintiff Houck thusly: "It was a pleasure having you here, albeit, for a short time. You did a great job on a very difficult case.  As I stated before you have a great presence in front of the jury, a strong command of your facts and evidence and overall, connected well with your jury.  All very promising qualities in a trial attorney.  You are always welcome back, just let me know when."

6

CLASS AND COLLECTIVE ACTION COMPLAINT

Around this time, Plaintiff Houck also raised her concerns with another partner who, around this time, was a member of Steptoe's Executive Committee and eventually the Co-Managing Partner of the Century City/Los Angeles offices.

22.     Two months later, in June, 2014, Steptoe changed Plaintiff Houck's official status to "associate," and increased her salary to $130,000.  At the time, Plaintiff Houck's male counterparts were earning $175,000 ($45,000 more than her).

23.     Beginning January 1, 2015, Plaintiff Houck's salary was increased to $160,000.  Meanwhile, her male counterparts were making $210,000 (approximately 30% more than her).

24.     Though she was a fourth-year attorney by this point, Steptoe was paying Plaintiff Houck the same salary that it paid first-year associates.

25.     In early 2015, Plaintiff Houck submitted a memo to the Associates Committee stating, essentially, that Steptoe had profited unfairly by paying her a reduced salary compared to her counterparts.  She was concerned—rightly—that she would never catch up.

26.     In March, 2015, Plaintiff Houck received a $5,000 bonus.  At the same time, one of her male counterparts received a $30,000 bonus.

27.     Sometime in March/April 2015, Plaintiff Houck told then-Managing Partner of the Century City/Los Angeles offices words to the effect that "I think everyone I work with would agree I am worth more than someone fresh out of law school, so it doesn't make sense that I am being paid $160,000."  She asked him, "How do I reach parity?"  The partner deflected her question, and advised her to be sure that she met the firm's requirement for billable hours.  In response, Plaintiff Houck told him words to the effect of: "I understand that hitting billable requirements is important, but others get base pay regardless of whether they hit billables, and get more in bonuses if they do hit billables."  To this, the partner had

CLASS AND COLLECTIVE ACTION COMPLAINT

1    no response.  He suggested she talk to her assigned "Champion," a partner in the

2    New York office whom she had never met.

3         28.    In December, 2015, Plaintiff Houck attempted to have her concerns

4    addressed by her "Champion."  Among other things, she wrote in an email: "I

5    would like to speak with you about my future at Steptoe.  I know that my skills and

6    experience far exceed that of someone straight out of law school, and that I am at

7    least as competent and valuable as my peers.  I am concerned that if nothing

8    changes for me then next year I'll be paid as a second year while my peers are paid

9    nearly 40% more.  I do not think this result would be reflective of my demonstrated

10   work at this firm."

11        29.    He never responded.

12        30.    In January, 2016, Plaintiff Houck submitted another memo to the

13   Associates Committee, this time asking for a $50,000 bonus.  She provided

14   multiple reasons supporting her request, including this: "My salary history and

15   annual reviews will show that I received a disproportionately low salary every year

16   I have been with Steptoe when compared to my skills, experience, and feedback

17   from my partners."

18        31.    Around this time, she spoke about this request, separately, with three

19   partners.  One of those partners told Plaintiff Houck that, in her view, she was the

20   office's best associate, and that she would try to get Plaintiff Houck's compensation

21   increased.

22        32.    In March, 2016, Plaintiff Houck was given a raise, retroactive to

23   January 1, 2016, to $200,000.  At the time, her male counterparts were earning

24   $230,000.

25        33.    Plaintiff Houck's last day at Steptoe was March 25, 2016.

26        34.    Throughout her tenure at Steptoe, Plaintiff Houck routinely received

27   ratings of "exceptional" and "excellence" in her annual performance evaluations.

28   Some of the partners' and Of Counsel's comments include:

CLASS AND COLLECTIVE ACTION COMPLAINT

a.  "I have been very impressed with her capability, professionalism and demeanor.  In fact I was surprised to learn her seniority level is not higher given how competent and reliable she is."

b.  "Ji-In is an exceptionally talented, dedicated and practical attorney.  I rely on her to take lead roles on cases.  She's an invaluable member of the team."

c.  "Ji-In is very intelligent, expeditious and hardworking.  She also has a fantastic 'can-do' personality."

d.  "Ji-In is a gem…a true asset to the firm."

e.  "Ji-In has a bright future here. She has all of the elements of an exceptional attorney.  I'm always glad to work with her and appreciate her dedication to the clients' cause, to the firm, her work ethics and bright outlook.  We are in constant communication as I rely on her to run many of my cases.  I hope she knows how much I value her hard work, dedication, intelligence and personality."

f.  "Ji-In is a real joy to work with."

g.  "Ji-In is a very hardworking associate with a great attitude.  She has the fire in her belly that exemplifies what we look for in young associates."

h.  "There is no assignment Ji-In has declined to take on.  She is eager to learn and gain experience.  Having litigated cases for many years, I am confident she will be a dynamic courtroom advocate.  I think her role in taking and defending depositions and participating in trial should be expanded.  She is a tireless worker."

i.  "Ji-In is a rare individual, as she combines the attributes of intelligence, hard work, creativity and a pleasant, engaging

9

1  personality."

2  j.  "Ji-In is a star.  For her level, the experience and expertise level

3  is off the charts."

4  k.  "Ji-In is an excellent associate in all respects.  I really enjoy

5  working with her.  She is hard working and intelligent.  We are

6  lucky to have her in our firm."

7  l.  "She is a rising superstar in our office."

8  m.  "Ji-In is generally my first choice whenever a new matter comes

9  in.  She is a great critical thinker, works hard, and is always a

10  pleasure to work with.  She is more advanced than her level

11  would suggest; I would trust her in court or to take a deposition.

12  She is just a great asset."

13  n.  "I recently worked closely with Ji-In on a difficult opposition

14  brief where the law and the facts were against us.  Rather than

15  simply give up, Ji-In thoroughly researched the issues and came

16  up with various procedural arguments that gave our client a

17  solid chance of prevailing.  Not only did Ji-In think critically

18  and proactively about the assignment, she drafted an opposition

19  brief that was especially well-written.  It was well-organized,

20  clearly-written, and persuasive.  The brief was stellar and was at

21  the level of an excellent senior associate.  I would highly

22  recommend Ji-In to others and look forward to the opportunity

23  to work with her on future assignments."

24  o.  "In my opinion there is no task that is beyond Ji-In's capabilities

25  as a litigator."

26  **The Devaluation of Steptoe & Johnson LLP's Women Attorneys**

27  35.  Steptoe has always been almost exclusively run by men.  Both

28  Steptoe's Chair and Vice-Chair are male.  The seven attorneys who are "Managing

CLASS AND COLLECTIVE ACTION COMPLAINT

Partners" of Steptoe's offices are all men.  The 13-person Compensation Committee is majority male, and the Associates Committee has historically been heavily male-dominated as well.

36.     At the partner level, Steptoe has only 42 women compared to 177 men, just 19.2% female and below the national average of 22.1%.[10]  The lack of representation of women in the firm's partnership ranks cannot easily be explained, especially given that women have been graduating from law school in near equal numbers for 30 years.[11]

37.     Steptoe's lower ranks reflect a more balanced gender division, with slightly fewer than half of the firm's associates being female (specifically, as of the drafting of this Complaint: 68 female associates compared to 74 male associates, or 48% female).  The sharp contrast between the number of women associates and women partners exposes Steptoe's utter failure to retain women attorneys over the long term.[12]  Observers of the legal market recognize that high attrition rates are

---

[10] National Association for Law Placement, Inc., *2016 Report on Diversity in U.S. Law Firms*, (Jan. 2017), http://www.nalp.org/uploads/Membership/ 2016NALPReportonDiversityinUSLawFirms.pdf, (last visited Jun. 22, 2017).

[11] ABA Section of Legal Education and Admission to the Bar, *Enrollment and Degrees Awarded: 1963 – 2012*, American Bar Association, https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_ admissions_to_the_bar/statistics/enrollment_degrees_awarded.pdf, (last visited Jun. 19, 2017) (American Bar Association annual statistics, showing that in 1985 women accounted for approximately 40% of first-year law students, and 50% of total J.D. enrollment in 1992).

[12] Despite a common misperception, research on gender diversity indicates that women *do not* leave the legal field to have children or raise a family.  *See e.g.*, Daniella Isaacson, *Elite Retreat: Do Women From Top Law School Leave the Law Earlier?* (Sep. 15, 2016),  http://www.law.com/sites/ali/2016/09/15/elite-retreat-do-women-from-top-law-schools-leave-the-law-earlier/ ("[O]nly about 10% of women leave the labor market to raise children."); *see also*, David Perla, *The Law Firm Gender Diversity Index: Findings and Analysis*, Above the Law, 10, https://www.bna.com/uploadedFiles/BNA_V2/Legal/Pages/Landing_Pages/LawFir

11

1   often attributable to a firm's management style, and not to any issue specific to

2   women attorneys or the legal profession generally.[13]  Steptoe is clearly no

3   exception.

4          38.    One obvious example of the lack of support Steptoe's female attorneys

5   endure is found in the marketing materials featured on the firm's website.

6   Although Steptoe claims its motto is "Strength in Diversity,"[14] Steptoe's feeble

7   encouragement of women at the firm is on display in its own promotional efforts.

8   Of the 287 news items on Steptoe's website in the last year, female attorneys were

9   recognized by the firm 156 times, while male attorneys were featured 614 times.

10  That's approximately 4 times as many mentions for men then women.[15]  For all its

11  talk, Steptoe's devotion to the promotion of its female attorneys, it seems, is as thin

12  and delicate as gossamer wings.

13  //

14  _____

15  mGenderDiversityIndex_2016.pdf, (last visited Jun. 19, 2017) ("[D]ata suggests
    that environmental factors within the workplace may be the primary driver of

16  female attrition, rather than environmental factors in the home or in society at
    large."); Lean In and McKinsey & Company, *Women in the Workplace* (2015),

17  https://www.nmhc.org/uploadedFiles/Articles/External_Resources/McKinsey-
    LeanIn%20Women_in_the_Workplace_2015.pdf ("Women are not leaving

18  organizations at higher rates than men.").

19

20  [13] *See e.g.*, Lisa Miller, *Stop Blaming Women for Holding Themselves Back at
    Work*, New York Magazine (Dec. 2, 2014), https://www.thecut.com/2014/12/stop-

21  blaming-women-for-holding-themselves-back.html ("[T]he problem lies with the
    culture in the workplace itself."); Liane Jackson, *Minority women are disappearing*

22  *from BigLaw—and here's why*, ABA Journal (Mar. 1, 2016),
    http://www.abajournal.com/magazine/article/minority_women_are_disappearing_fr

23  om_biglaw_and_heres_why.

24

25  [14] *Diversity*, Steptoe & Johnson LLP, http://www.steptoe.com/careers-
    diversity.html, (last visited Jun. 19, 2017).

26

27  [15] *News*, Steptoe & Johnson LLP, http://www.steptoe.com/news-newsroom.html,
    (last visited Jun. 19, 2017).

28

CLASS AND COLLECTIVE ACTION COMPLAINT

39.     Although Steptoe claims to "pursue its mission of bringing women professionals together to share experiences and build networking opportunities," through its Women's Forum ("an organized committee that sponsors activities to advance, recognize, and connect our women lawyers and professionals"),[16] this is empty talk.  Each year Plaintiff Houck worked at Steptoe, she was asked to complete a form indicating her interest in various committees.  Each year, Plaintiff Houck checked the box next to "Diversity/Women's."  Nothing ever came of it, however, and Plaintiff Houck was never engaged by Steptoe's "Women's Forum," in any respect.  Despite the firm's promise that the Women's Forum "provides support to our women lawyers at all levels in connection with career advancement and business development,"[17] Plaintiff Houck's experience evidences a true lack of investment in the firm's women lawyers.  Window dressing like Steptoe's Women's Forum cannot be a substitute for fair and legal treatment of employees.

40.     Notably, Steptoe is absent from both the *National Law Journal*'s list of the top 100 law firms in its most recent "Women in Law Scorecard" and *Law360*'s list of 100 large law firms recognized for being "Best Law Firms for Female Attorneys."[18]

41.     In 2011, recognizing a lack of diversity in its ranks, Steptoe constituted an external Diversity Advisory Board ("DAB") "to serve as a conduit through which Steptoe can import current information on innovative inclusion strategies,

---

[16] *Women's Forum*, Steptoe & Johnson LLP, http://www.steptoe.com/about-women.html, (last visited Jun. 19, 2017).

[17] *Careers*, Steptoe & Johnson LLP, http://www.steptoe.com/careers-diversity.html, (last visited Jun. 19, 2017).

[18] *The Best Big Firms in Big Law for Women*, The American Lawyer (Aug. 1, 2016), http://www.americanlawyer.com/home/id=1202762963381; Jacqueline Bell, *The 100 Best Law Firms for Female Attorneys*, https://www.law360.com/articles/784729/the-100-best-law-firms-for-female-attorneys, (last visited Jun. 19, 2017).

CLASS AND COLLECTIVE ACTION COMPLAINT

1  business trends, and challenges in the legal market, as well as to ensure
2  accountability and to advocate for Steptoe's success."[19]

3  **Steptoe & Johnson LLP Underpaid Other Women Attorneys**

4  42.    Plaintiff Houck is not alone.  She is aware of other women attorneys
5  who were also underpaid by Steptoe.

6  43.    For example, one female associate, hired in 2013 with nine years of
7  experience, was placed in a lower pay level than men licensed to practice law for
8  the same amount of time: she was paid $190,000 while her male counterparts were
9  earning $250,000-$280,000.  This associate was doing the exact same work as her
10  male counterparts, but was paid substantially less.

11  44.    Another female attorney was brought in as a contract attorney in 2010.
12  When she was eventually given the title of associate in 2014, she was placed in a
13  lower pay level than she should have been given her level of experience (she was
14  licensed to practice law in 2005).  She was paid $160,000 while her male
15  counterparts were earning $250,000-$280,000 for the same or substantially similar
16  work.

17  **Steptoe & Johnson LLP's Refusal to Correct the Problem**

18  45.    Plaintiff Houck complained about her pay over a period of years, and
19  Steptoe did nothing to correct the disparity between her and her male counterparts,
20  despite the fact that the firm's Employment Law team—with "more than 200 years
21  of experience," according to Steptoe's website—is well-prepared to understand the
22  importance of equal pay for women.[20]

23  //

24

25  [19] *Diversity*, Steptoe & Johnson LLP, http://www.steptoe.com/about-diversity.html,
26  (last visited Jun. 19, 2017).

27  [20] *Practice Areas: Labor & Employment*, Steptoe & Johnson LLP,
28  http://www.steptoe.com/practices-401.html, (last visited Jun. 19, 2017).

CLASS AND COLLECTIVE ACTION COMPLAINT

46.     Steptoe handles "a broad range of advisory and litigation matters on behalf of employers" and regularly advises clients on issues affecting equal employment opportunity and wrongful discharge.[21]  Steptoe's litigation experience is equally broad, ranging from "assisting clients at all level of administrative and judicial litigation to having represented clients in leading employment class action and sexual harassment cases before the Supreme Court."[22]

47.     As Steptoe explains on its website: "Proactive employers can prepare themselves to address pay discrimination claims. . . First, employers should adopt procedures to review and document all performance and pay determinations.  Second, employers should consider an internal audit of compensation practices to identify discrepancies, particularly those that may affect employees with protected characteristics.  Finally, document retention policies should be reviewed with long-term storage in mind…Of course, employers should train managers and supervisors on all non-discrimination policies, including those that prohibit pay discrimination."[23]

48.     Had Steptoe taken Plaintiff Houck's complaints seriously over the years—as it counsels its clients to do—this lawsuit would have likely been averted.

**Steptoe's Highly-Structured Organization and Centralized Decision-Making**

49.     Steptoe's compensation policies, practices, and procedures are consistent across its offices nationwide.  The administration of Steptoe's

---

[21] *Id.*

[22] *Id.*  Until recently, Steptoe's legal team even included the former General Counsel of the United States Equal Employment Opportunity Commission.  *See Alumni*, Steptoe & Johnson LLP, http://www.steptoe.com/careers-alumni.html, (last visited Jun. 19, 2017).

[23] Elizabeth Call & Sandra Sanders, *Ledbetter Act Opens Door for More Pay Discrimination Claims* (Feb. 2, 2009), http://www.steptoe.com/resources-detail-5867.html.

CLASS AND COLLECTIVE ACTION COMPLAINT

compensation system for attorneys is centralized, and the firm's compensation decisions originate from a highly concentrated and male-dominated management regime.

50.     Steptoe's attorney job responsibilities are consistent nationwide.

51.     Steptoe maintains an intranet, which all of its attorneys can access for employment-related information.

52.     Steptoe utilizes uniform performance evaluations across all of its offices, and makes centralized decisions about billable hours, bonuses, and all manner of other employment policies governing its attorneys' employment conditions.

53.     Steptoe's management hierarchy is well-defined and highly structured.

54.     There is an Executive Committee, which is responsible for the development and implementation of firm policy.  The Executive Committee is headed by a Chair (male) and Vice-Chair (also male).  The Chair is considered Steptoe's "managing partner."  Today, the Executive Committee consists of nine men and two women.

55.     Historically, the Executive Committee has been nearly exclusively male.

56.     There are six primary Practice Departments, including: Business Solutions, Litigation, Energy & Natural Resources, International, Technology, and Internet & Media, although Steptoe attorneys "are not strictly departmentalized and often practice in several areas of the firm."[24]

//

//

//

_____

[24] *Careers: Work Environment*, Steptoe & Johnson LLP, http://www.steptoe.com/careers-environment.html, (last visited Jun. 19, 2017).

16

CLASS AND COLLECTIVE ACTION COMPLAINT

1   Steptoe's Practice Departments are further compartmentalized into 26 Practice
2   Areas, overseen by Practice Group Leaders, who work closely with the Chair in
3   developing and managing the firm's practice in all respects.[25]

4       57.    Of the 42 Practice Group Leader positions, only seven are filled by
5   women, or 16.7%.

6       58.    The Compensation Committee consists of the Chair of the Executive
7   Committee and eight members elected by the partnership.

8       59.    The Compensation Committee is, and historically has been, majority
9   male.

10      60.    The Associates Committee is composed of partners and associates,
11  with two associates serving as Vice-Chairs.  The Associates Committee oversees all
12  matters relating to associates, including their entry and orientation into the firm,
13  compensation, evaluations, training and professional development.  Each year,
14  Steptoe's associates across the country are evaluated by partner members of the
15  Associates Committee.

16      61.    The Associates Committee is, and historically has been, majority male.

17      62.    The firm has detailed written policies on all manner of topics,
18  including taking on new clients, case budgeting, time keeping and billing rates,
19  expense accounts and reimbursement policies, electronic communications, internet
20  use, vacations, parental leave, opinion letters, representation of prior retained
21  clients, responses to auditors, inventions, and others.

22      63.    The firm utilizes centralized systems for docket control, training of
23  legal assistants, billing and collections, library/research assistance, and other core
24  firm tasks.

25  //

26  _____

27  [25] Some Practice Groups have a sole Practice Group Leader; others have multiple
    Practice Group Leaders.
28

CLASS AND COLLECTIVE ACTION COMPLAINT

64.     Associates are trained in-house in accordance with firm-wide, substantive, training protocols.

65.     In the past, Steptoe's associates have been segregated into eight compensation levels.  Level 1 is generally for those associates who are in their first year out of law school; Level 2 for second years, and so on through Level 7.  Steptoe's compensation levels have not been strictly adhered to and Steptoe has unfairly relegated women attorneys to lower levels than their male counterparts, a practice which contributes to the unequal pay of the firm's women attorneys.

**Steptoe's Policies, Practices and Procedures Result In Unequal Pay**

66.     Steptoe's male-dominated leadership maintains centralized control over the firm's compensation policies, practices and procedures which result in unequal pay.  Additionally, Steptoe's male-dominated leadership maintains centralized control over other policies, practices and procedures which impact compensation, such as, job assignment, career progression, promotion, training, and evaluations.  Such policies, procedures and practices are not valid, job-related, or justified by business necessity.

67.     The employment policies, procedures and practices at issue are not unique or limited to any particular office; rather, they apply to all of Steptoe's locations and, thus, affect all women attorneys in the same manner regardless of the office in which they work.

68.     Steptoe's uniform policies, procedures and practices suffer from a lack of transparency, adequate quality standards and controls, sufficient implementation metrics, management/HR review, and opportunities for redress or challenge.  As a result, women attorneys are assigned, evaluated, compensated, developed, and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or equitably manage or reward employees.

69.     Steptoe also lacks a system of accountability with respect to gender discrimination.  Social science research has increasingly shown that implementing a

18

meaningful system which holds employees accountable for making unbiased personnel decisions is an effective means of eradicating unequal pay.  A meaningful system of accountability includes transparency in the distribution of opportunities and rewards, which is sorely deficient at Steptoe.  A meaningful system of accountability also includes regular monitoring to identify instances in which rewards and opportunities are not distributed appropriately.  Decision makers should be required to justify personnel decisions, and some entity, individual or department, should be charged with addressing instances in which fair treatment has been violated, and sanctioning those who engage in unfair treatment.  In other words, organizations need a department or individual who receives regular reports on the decisions that have been made impacting gender.  That individual or department must regularly monitor all personnel actions to compare how employees of different sexes have been treated, and must have sufficient clout to remedy unfair personnel actions and appropriately sanction the decision makers who violated the organization's standards of fair behavior.

70.     Businesses have systems of accountability for all consequential processes—accident rates, losses, output, etc.  The research on accountability shows that decision makers who know that they are going to be held accountable for an outcome are less likely to use irrelevant criteria in making a decision, and that women fare better in organizations that have accountability systems associated with personnel evaluation.

71.     Without the appropriate standards, guidelines, or transparency necessary to ensure an equitable workplace, unfounded criticisms may be lodged against women attorneys and illegitimate criticisms may be given undue weight.

72.     Like other firms that operate without transparency, consistency, and accountability, Steptoe's partnership tends to value male attorneys more than female attorneys.  The firm's overall corporate culture and the uniform policies, procedures and practices inevitably result in systemic pay discrimination to the

disadvantage of the firm's female attorneys.  Such pay discrimination is manifested in multiple ways, including, without limitation, by: (a) paying Plaintiff Houck and other female attorneys less than similarly-situated male attorneys; (b) failing to advance Plaintiff and other female attorneys at the same rate as male attorneys performing equal or substantially similar work; and (c) other adverse employment actions.

## CLASS ACTION ALLEGATIONS

**Federal Equal Pay Act Claims are Brought on Behalf of a Nationwide Class**

73.    Plaintiff alleges violations of the federal Equal Pay Act ("EPA") on behalf of: any woman employed by Steptoe & Johnson LLP at any time during the applicable liability period as a contract attorney and/or associate (the "**Nationwide EPA Class**").

74.    Members of the Nationwide EPA Class were not compensated equally to males who performed equal work based on Steptoe's common and centralized employment policies, procedures and practices and/or were denied assignment, placement, promotion and/or advancement opportunities that would have resulted in greater compensation in favor of less-qualified males based on Steptoe's common and centralized employment policies, procedures and practices.

75.    Questions of law and fact common to Plaintiff and the Nationwide EPA Class include, without limitation:

> (a) whether Steptoe failed to compensate Nationwide EPA Class members at levels commensurate with males performing equal work;
>
> (b) whether Steptoe failed to assign, place, promote and/or advance Nationwide EPA Class members to higher paying positions in a fashion commensurate with similarly-situated males;
>
> (c) whether Steptoe's policies, procedures or practices of failing to compensate Nationwide EPA Class members on par with comparable males as a result of (a) and (b) violate applicable provisions of the

20

CLASS AND COLLECTIVE ACTION COMPLAINT

EPA; and

(d) whether Steptoe's failure to compensate Nationwide EPA Class members on par with comparable males as a result of (a) and (b) was "willful" within the meaning of the EPA.

76. Violations of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), because Plaintiff's claims are similar to the claims of all putative members of the Nationwide EPA Class.

77. Plaintiff and the members of the Nationwide EPA Class are similarly situated due to the fact that they:

(a) have/had jobs requiring substantially equal skill, effort and responsibility;

(b) have/had jobs performed under similar working conditions;

(c) have/had substantially similar job classifications, job functions, job titles, job descriptions, and/or job duties; and

(d) are/were all subject to Steptoe's common and centralized compensation policies, procedures and practices resulting in unequal pay based on sex by:

(i) failing to compensate Nationwide EPA Class members on par with males who perform/ed equal work, and

(ii) failing to provide Nationwide EPA Class members equal pay by denying opportunities for assignment, placement, promotion and/or advancement that would have resulted in greater compensation to them comparable to those afforded to males who perform/ed equal work.

**Claims Brought on Behalf of a California Class**

78. In addition to the Nationwide EPA Class, Plaintiff alleges violations of California law on behalf of: any woman employed in California by Steptoe &

21

1   Johnson LLP at any time during the applicable liability period as a contract attorney
2   and/or associate (the "**California Class**").

3        79.   On behalf of the California Class, Plaintiff bring claims under the
4   California Fair Pay Act, California Labor Code § 1197.5, and California's Unfair
5   Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

6        80.   The proposed California Class meets the requirements for certification
7   pursuant to Federal Rule of Civil Procedure 23(a), as well as subsections (b)(2),
8   (b)(3) and (c)(4), as described below.

9                    **Numerosity and Impracticability of Joinder**

10       81.   On information and belief, the California Class consists of dozens of
11   former, current and future female attorneys, too numerous to make joinder
12   practicable.

13                       **Common Questions of Law and Fact**

14       82.   The prosecution of the California Class' claims requires the
15   adjudication of numerous questions of law and fact common to Plaintiff Houck's
16   individual claims and those of the California Class members.

17       83.   The common questions of law include, *inter alia*:

18       (a) whether Steptoe has engaged in unlawful pay discrimination in its
19            compensation, assignment, performance evaluation, promotion, and/or
20            advancement policies, procedures and practices, and in the general
21            terms and conditions of work and employment under the California
22            Fair Pay Act;

23       (b) whether the failure to institute adequate standards, quality controls,
24            implementation metrics, or oversight in assignment, compensation,
25            evaluation, development, promotion and/or advancement systems
26            violates the California Fair Pay Act;

27       (c) whether the lack of transparency and of opportunities for redress in
28            those systems violates the California Fair Pay Act and/or other

CLASS AND COLLECTIVE ACTION COMPLAINT

statutes; and

(d) whether Steptoe's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates the California Fair Pay Act.

84.    The common questions of fact include whether Steptoe has, *inter alia*:

(a) used a system of assignment that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress;

(b) through the use of that system of assignment, placed California Class members in job classifications and/or job titles lower than similarly-situated males;

(c) systematically, intentionally and/or knowingly placed California Class members in job classifications and/or job titles lower than similarly-situated males;

(d) used a compensation system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress;

(e) through the use of that compensation system, compensated California Class members less than similarly-situated males in salaries, bonuses, raises, and/or benefits;

(f) systematically, intentionally, and/or knowingly compensated California Class members less than similarly-situated males;

(g) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress;

(h) through the use of that promotion system, precluded or delayed the promotion of California Class members into higher level positions traditionally held by males;

23

CLASS AND COLLECTIVE ACTION COMPLAINT

(i) systematically, intentionally and/or knowingly precluded or delayed the promotion of California Class members into higher levels positions traditionally held by males;

(j) used a system for performance evaluations that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress;

(k) through the use of that performance evaluation system inadequately, inequitably, or disparately measured and classified California Class members' and similarly-situated males' performance;

(l) systematically, intentionally and/or knowingly subjected California Class members to inaccurate, inequitable or discriminatorily-lowered performance evaluations;

(m) used HR and equal employment opportunity systems that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress;

(n) through the use of those systems, minimized, ignored or covered up evidence of pay discrimination and/or otherwise mishandled the investigation of responses to complaints of pay discrimination brought to the attention of partners, the HR department, or through other reporting channels;

(o) systematically, intentionally, and/or knowingly showed an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints about pay discrimination; and

(p) failed to adequately or meaningfully train, coach or discipline partners and other management personnel on equal employment opportunity principles and compliance.

//

CLASS AND COLLECTIVE ACTION COMPLAINT

85.     The answers to these common questions will be the same for Plaintiff Houck and all California Class members and will establish (or not establish) the elements of Plaintiff's claims at the same time as the California Class members' claims.

**Typicality**

86.     Plaintiff Houck's claims are typical of the claims of the California Class.  The relief sought by Plaintiff for gender pay discrimination complained of herein is also typical of the relief sought on behalf of the California Class.

87.     Like the members of the California Class, Plaintiff is female and worked as an attorney for Steptoe during the liability period and was paid less than her male counterparts doing the same or substantially similar work.

88.     Additionally, discrimination in assignment, selection, promotion, and/or advancement affected the compensation and employment opportunities of Plaintiff Houck and all members of the California Class in the same or similar way.

89.     Steptoe has failed to create adequate incentives for its partners and HR personnel to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, procedures and practices referenced in this Complaint, and has failed to adequately discipline its partners and HR personnel when they violated firm policy and/or discrimination laws.  These failures have affected Plaintiff and the California Class members in the same or similar ways.

90.     The relief necessary to remedy the claims of Plaintiff Houck is the same relief necessary to remedy the claims of the California Class members in this case.

**Adequacy of Representation**

91.     Plaintiff Houck's interests are co-extensive with those of the members of the California Class.  Plaintiff seeks to remedy Steptoe's discriminatory employment policies, procedures and practices so that California Class members

25

1    will no longer be paid less than their male counterparts doing the same or similar

2    work. Plaintiff is willing and able to represent the California Class fairly and

3    vigorously as she pursues her individual claims in this action.

4          92.    Plaintiff Houck has retained counsel who are qualified, experienced,

5    and able to conduct this litigation and to meet the time and fiscal demands required

6    to litigate an employment discrimination class action of this size and complexity.

7    The interests, experience, and resources of Plaintiff's counsel to litigate

8    competently the individual and class claims at issue in this case satisfy the

9    adequacy of representation requirement.

10                      **Requirements of Rule 23(b)(2)**

11         93.    Steptoe has acted or refused to act on grounds that apply generally to

12   the California Class, so that final injunctive relief and/or corresponding declaratory

13   relief is appropriate respecting the California Class as a whole.

14         94.    Steptoe has failed to create adequate incentives for its partners, and its

15   managerial and supervisory personnel, to comply with laws regarding the

16   employment policies, practices, and procedures described herein.

17         95.    Steptoe has acted on grounds generally applicable to Plaintiff Houck

18   and the California Class by adopting and implementing systemic policies, practices,

19   and procedures that are discriminatory.

20         96.    Steptoe has refused to act on grounds generally applicable to the

21   California Class by, *inter alia*, paying Plaintiff Houck and California Class

22   members less than similarly-situated males; and failing to promote or advance

23   Plaintiff Houck and California Class members at the same rate as similarly-situated

24   males.

25         97.    Steptoe's systemic discrimination and refusal to act on grounds that

26   are not discriminatory have made appropriate the requested final injunctive or

27   declaratory relief with respect to the California Class as a whole.

28   //

CLASS AND COLLECTIVE ACTION COMPLAINT

**Requirements of Rule 23(b)(3)**

98.     The common issues of fact and law affecting the claims of Plaintiff Houck and the California Class members predominate over any issues affecting only individual claims.  These issues include whether Steptoe has engaged in gender discrimination against California Class members by:

     (a) paying Plaintiff Houck and California Class members less than similarly-situated males performing the same or substantially similar work;

     (b) failing to promote or advance Plaintiff Houck and California Class members at the same rate as similarly-situated males; and

     (c) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender pay discrimination.

99.     Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiff Houck and the California Class.

100.    Plaintiff Houck's individual claims require resolution of the common questions of whether Steptoe has engaged in pay discrimination against the California Class members.

101.    Plaintiff Houck has standing to seek such relief because of the adverse effect that such discrimination has had on her as an individual and on California Class members generally.  Steptoe caused Plaintiff's injuries through its discriminatory policies, procedures and practices.  These injuries are redressable through systemic relief and class-wide remedies.

102.    In order to achieve such class-wide relief, Plaintiff will first establish the existence of systemic gender pay discrimination as the premise for the relief she seeks.  Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Certification of the

27

1 California Class is the most efficient and judicious means of presenting the

2 evidence and arguments necessary to resolve such questions for Plaintiff Houck, the

3 California Class, and the Defendant.

4    103. The cost of proving the damages caused by Steptoe's policies,

5 procedures and practices makes it impracticable for Plaintiff Houck and members

6 of the California Class to prosecute their claims individually.

7         **Requirements of Rule 23(c)(4)**

8    104. Class-wide liability and the relief sought herein present common issues

9 capable of class-wide resolution, which would advance the interests of the parties in

10 an efficient manner.

11          **FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT OF 1938,**

12    **AS AMENDED BY THE EQUAL PAY ACT OF 1963**
**DENIAL OF EQUAL PAY FOR EQUAL WORK**

13        **29 U.S.C. § 206(d) et seq.**
**(On Behalf of Plaintiff and the Nationwide EPA Class)**

14

15    105. Plaintiff hereby incorporates and realleges each and every preceding

16 paragraph of this Complaint as if the same were set forth at length herein.

17    106. This cause of action is brought by Plaintiff, individually, and on behalf

18 of the Nationwide EPA Class, including all Nationwide EPA Class members who

19 "opt in" to this action.

20    107. Steptoe & Johnson LLP is an "employer" within the meaning of 29

21 U.S.C. § 203(d).

22    108. Plaintiff and members of the Nationwide EPA Class are "employees"

23 within the meaning of 29 U.S.C. § 203(e).

24    109. Steptoe's offices across the country conduct related activities under

25 centralized control, and for a common business purpose.  As such, even though the

26 Nationwide EPA Class members work in different locations, they are all employed

27 by a single establishment.

28 //

CLASS AND COLLECTIVE ACTION COMPLAINT

110.   Steptoe has discriminated against Plaintiff and the Nationwide EPA Class members in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), *et seq.*, as amended by the Equal Pay Act of 1963 ("EPA"), by providing them with lower pay than similarly-situated males even though Plaintiff, and all other similarly-situated females, performed the same or substantially similar duties requiring the same skill, effort and responsibilities of their male counterparts, and are or were performed under similar working conditions.

111.   Steptoe so discriminated by subjecting Plaintiff and the Nationwide EPA Class members to common discriminatory pay policies, including discriminatory salaries, raises, bonuses and other compensation incentives, and discriminatory assignments, denials of promotions, and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the EPA.

112.   The differential in pay between males and females was not due to seniority, merit, quantity or quality of production, but was due to gender.

113.   Steptoe caused, attempted to cause, contributed to, or caused the continuation of, the pay discrimination based on sex in violation of the EPA.

114.   The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).  Because Steptoe has willfully violated the EPA, a three-year statute of limitations applies to such violations.

115.   As a result of Steptoe's conduct, Plaintiff and the members of the Nationwide EPA Class have suffered and will continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

116.   By reason of Steptoe's discrimination, Plaintiff and the Nationwide EPA Class members are entitled to all legal and equitable remedies available for violations of the EPA including but not limited to, compensatory damages,

CLASS AND COLLECTIVE ACTION COMPLAINT

1   liquidated damages for all willful violations, prejudgment interest, attorneys' fees,

2   costs, and other compensation pursuant to 29 U.S.C. § 216(b).

3
**SECOND CLAIM FOR RELIEF**
**VIOLATIONS OF THE CALIFORNIA FAIR PAY ACT**
4
**California Labor Code § 1197.5, *et seq.***
**(On Behalf of Plaintiff and the California Class)**
5

6   117.   Plaintiff hereby incorporates and realleges each and every preceding

7   paragraph of this Complaint as if the same were set forth at length herein.

8   118.   This cause of action is brought by Plaintiff, individually, and on behalf

9   of the California Class.

10   119.   Steptoe has discriminated against Plaintiff and California Class

11   members in violation of California Labor Code § 1197.5, *et seq.* by paying Plaintiff

12   and California Class members less when compared against similarly-situated males

13   who performed the same or substantially similar work when viewed as a composite

14   of skill, effort, and responsibility, and which were performed under similar working

15   conditions.  Steptoe so discriminated by subjecting them to discriminatory pay,

16   raises, and/or bonuses, discriminatory denials of promotions and other advancement

17   opportunities that would result in higher compensation, and other forms of

18   discrimination in violation of the California Fair Pay Act.

19   120.   Steptoe caused, attempted to cause, contributed to, or caused the

20   continuation of, the wage rate discrimination based on sex in violation of the

21   California Fair Pay Act.  Moreover, Steptoe willfully violated the California Fair

22   Pay Act by intentionally, knowingly, and deliberately paying Plaintiff and

23   California Class members less than similarly-situated males.

24   121.   As a result of Steptoe's conduct and/or Steptoe's willful, knowing, and

25   intentional discrimination, Plaintiff and the California Class members have suffered

26   and will continue to suffer harm, including but not limited to, lost earnings, lost

27   benefits, and other financial loss, as well as non-economic damages.

28   //

CLASS AND COLLECTIVE ACTION COMPLAINT

122. Plaintiff and the California Class members are therefore entitled to all legal and equitable remedies, including but not limited to compensatory damages, and liquidated damages.

123. Attorneys' fees should be awarded under California Labor Code § 1197.5.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Business and Professions Code § 17200, *et seq.***
**(On Behalf of the Plaintiff and the California Class)**

124. Plaintiff hereby incorporates and realleges each and every preceding paragraph of this Complaint as if the same were set forth at length herein.

125. This cause of action is brought by Plaintiff, individually, and on behalf of the California Class.

126. Steptoe is a "person" as defined under California Business & Professions Code § 17201.

127. Steptoe's failure to pay Plaintiff and California Class members equally constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code § 17200. As a result of its unlawful and/or unfair acts, Steptoe reaped and continues to reap benefits at the expense of Plaintiff and the California Class members. Steptoe should be enjoined from these activities.

128. Accordingly, Plaintiff and the California Class members are entitled to restitution with interest and other equitable relief.

//
//
//
//
//
//
//

31

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, the Nationwide EPA Class, and the California Class, prays that this Court:

a.     Maintain the designation of this action as a collective action on behalf of the proposed Nationwide EPA Class;

b.     Certify this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a) and (b)(2), (b)(3) and/or (c)(4) on behalf of the California Class, designate Plaintiff Houck as the Class Representative, and her counsel as Class Counsel;

c.     Declare and adjudge that Steptoe's employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Plaintiff, members of the Nationwide EPA Class, and members of the California Class;

d.     Issue a permanent injunction against Steptoe and its partners, officers, owners, agents, successors, employees, and/or representatives, and any and all persons acting in concert with them, enjoining them from engaging in any further unlawful policies, practices, and/or policies giving rise to gender discrimination as set forth herein;

e.     Order Steptoe to initiate and implement programs that will: (1) provide equal employment opportunities for female attorneys; (2) remedy the effects of Steptoe's past and present unlawful employment policies, practices and procedures; (3) eliminate the continuing effects of the discriminatory and retaliatory conduct described herein;

f.     Order Steptoe to initiate and implement systems of assigning, training, compensating and promoting female attorneys in a non-discriminatory manner;

g.     Order Steptoe to establish a task force on equality and fairness to determine the effectiveness of the programs described in (e) and (f), above, which would provide for: (1) monitoring, reporting, and retaining jurisdiction to ensure

CLASS AND COLLECTIVE ACTION COMPLAINT

1   equal employment opportunity; (2) the assurance that injunctive relief is properly

2   implemented; and (3) a quarterly report setting forth information relevant to the

3   determination of the effectiveness of the programs described in (e) and (f), above;

4        h.    Order Steptoe to adjust the salaries and benefits for its current female

5   attorneys to the level that they would be enjoying but for Steptoe's discriminatory

6   policies, practices and procedures;

7        i.    Order that this Court retain jurisdiction of this action until such time as

8   the Court is satisfied that Steptoe has remedied the conduct complained of herein

9   and is determined to be in full compliance with the law;

10        j.    Award back pay, front pay, lost benefits, and other damages for lost

11   compensation and job benefits with pre-judgment and post-judgment interest

12   suffered by Plaintiff, the Nationwide EPA Class members, and the California Class

13   members, in amounts to be determined at trial;

14        k.    Order Steptoe to make whole Plaintiff, the Nationwide EPA Class

15   members, and the California Class members, by providing them with appropriate

16   lost earnings and benefits, and other affirmative relief;

17        l.    Award nominal, compensatory, and liquidated damages to Plaintiff,

18   the Nationwide EPA Class members, and the California Class members;

19        m.    Award litigation costs and expenses, including, but not limited to,

20   reasonable attorneys' fees, to Plaintiff, the Nationwide EPA Class members, and

21   the California Class members;

22        n.    Award statutory and civil penalties as appropriate;

23        o.    Award any other appropriate equitable relief to Plaintiff, the

24   Nationwide EPA Class members, and the California Class members;

25        p.    Award any other relief as this Court may deem just and proper.

26   //

27   //

28   //

CLASS AND COLLECTIVE ACTION COMPLAINT

1

DATE:  June 22, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANDRUS ANDERSON LLP

By:  ___/s/ Lori E. Andrus_____
            Lori E. Andrus

Lori E. Andrus (SBN 205816)
lori@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone: (415) 986-1400
Facsimile:  (415) 986-1474

*Attorneys for Plaintiff*

34

CLASS AND COLLECTIVE ACTION COMPLAINT

# **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself, the Nationwide EPA Class, and the California Class, demands a jury trial in this action for all claims so triable.


DATE:  June 22, 2017                                     ANDRUS ANDERSON LLP

By:     */s/ Lori E. Andrus*
Lori E. Andrus

Lori E. Andrus (SBN 205816)
lori@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone: (415) 986-1400
Facsimile:  (415) 986-1474

*Attorneys for Plaintiff*

CLASS AND COLLECTIVE ACTION COMPLAINT