David J. Reis (No. 155782)
E-mail:  david.reis@apks.com
Dipanwita Deb Amar (No. 184770)
E-mail:  dipanwita.amar@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: +1 415.471.3100
Fax: +1 415.471.3400

Attorneys for Defendant
STEPTOE & JOHNSON LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JI-IN HOUCK, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>STEPTOE & JOHNSON LLP,<br><br>               Defendant. | Case No. 2:17-cv-04595-ODW-AFM<br><br>**DECLARATION OF LINDA G. ROSENSWEIG IN SUPPORT OF DEFENDANT STEPTOE & JOHNSON LLP'S MOTION TO COMPEL ARBITRATION, DISMISS THE COMPLAINT AND STAY ACTION**<br><br>Date:      September 11, 2017<br>Time:     1:30 p.m.<br>Place:    Ctrm. 5D, 5th Floor<br>Judge:   Hon. Otis D. Wright II |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF LINDA G. ROSENSWEIG

I, LINDA G. ROSENSWEIG, declare as follows:

Background

1.     I have been employed by Steptoe & Johnson LLP ("Steptoe" or the "Firm") since October 2006.  I have personal knowledge of the facts set forth in this declaration and could testify competently to them.

2.     Steptoe is an international law firm that provides legal services to clients across the United States and around the world.  The Firm has offices in four states (California, Illinois, Arizona, and New York), and Washington, D.C., as well as London, Brussels and Beijing.

3.     I am currently the Director of Office Administration, with responsibility for the administration of the Firm's San Francisco and Los Angeles offices.  During the entire time that Plaintiff Ji-In Houck was employed by the Firm, I worked as the Legal Administrator (and later Director of Office Administration) of the Firm's Century City office, where Plaintiff worked.  The Firm consolidated its Century City office with the Los Angeles office in the summer of 2016, and employees moved from the Century City office to the Los Angeles office at that time.  Steptoe no longer occupies office space in Century City.

4.     My office in Century City was on the same floor as (and in close proximity to) Plaintiff's office, and I had the opportunity to observe and interact with Plaintiff almost every day that we were both in the office, which was most days.  As the Legal Administrator or Director of Office Administration, I was in charge of many tasks in the Century City office, including hiring all of the office's support staff (such as secretaries and paralegals), assisting with attorney recruiting, overseeing the

office's accounting and facilities management operations, and serving as the office's liaison to the Firm's headquarters in Washington D.C.  In this role, I was often in direct contact with Plaintiff.  For example, I facilitated Plaintiff's reviews of her secretaries and often helped Plaintiff (and other attorneys) with issues relating to staffing of secretaries, paralegals, and other support staff.  I also was responsible for helping set compensation for support staff and for performance management (including discipline and termination) of support staff, including Plaintiff's secretaries.

5.      Throughout my employment at Steptoe, I have had access to personnel records, performance evaluations, disciplinary records, and other employee files for employees in Steptoe's California offices.  These files are maintained in the regular course of Steptoe's business and made at or near the time of the act or event recorded in the respective documents.

Plaintiff's Work

6.      I have reviewed some of Plaintiff's billing records.  I also have knowledge of her work based on my personal interactions with her during her employment.  Plaintiff, like other Steptoe attorneys in the Century City office, performed legal services for and interacted with Steptoe clients (and other Steptoe attorneys) from states other than California.  Throughout her tenure, Plaintiff communicated with clients and other attorneys outside of California by mail, email, and telephone.

Female Attorneys in Steptoe's California Offices

7.      Currently, Steptoe has only two offices in California.

8.     Since June 22, 2013, including Plaintiff, Steptoe has only employed a combined total of 14 female associates and contract attorneys in its California offices (which includes San Francisco, Los Angeles, and two offices that no longer exist -- Century City and Palo Alto).

Plaintiff's Hiring

9.     In February 2013, Plaintiff contacted me to submit an application for employment.  I acted as Plaintiff's point of contact at the Firm throughout the recruitment and hiring process.

10.    Attached hereto as Exhibit A is a copy of Plaintiff's first employment contract with the Firm, which Plaintiff signed on April 9, 2013.  Section 7 of Exhibit A contains an arbitration provision.

11.    Attached hereto as Exhibit B is a copy of Plaintiff's second employment contract with the Firm, which Plaintiff signed on May 7, 2014.  Section 7 of Exhibit B contains an arbitration provision that is identical to the arbitration provision in Exhibit A.

Plaintiff's Supervisory Duties

12.    Plaintiff had significant supervisory authority over the Firm's support staff.  As a contract attorney and as an associate, Plaintiff was assigned a secretary to assist her on a daily basis.  Plaintiff had the authority and discretion to assign work to, and direct the work of, her secretary, and she did so throughout the time that she was employed at the Firm.  Plaintiff also had the authority and discretion to assign work that she deemed appropriate to any other secretary based upon her independent evaluation of the secretary's schedule and individual strengths and weaknesses.  For example, if an attorney knows that one secretary often files documents with a

DECLARATION OF LINDA ROSENSWEIG ISO DEF.'S MOTION TO COMPEL ARBITRATION, DISMISS & STAY

particular court, the attorney can assign that secretary to file her document when she has a filing due in that court.  Steptoe expects its attorneys to be proactive in their supervision of the Firm's support staff and does not control how attorneys use the support staff to aid them in their practice.

13.  Plaintiff also completed performance evaluations for her secretary and a paralegal.  The performance evaluations that Plaintiff completed for her secretary were used to make employment decisions regarding the secretary, including whether the secretary should receive a pay increase and, if so, the amount of the increase. Plaintiff's performance evaluations of her secretary carried significant weight in determining her secretary's compensation.  I used attorney evaluations as a factor in determining the compensation of secretaries, consistent with the Firm's compensation ranges for secretaries.  Plaintiff was not instructed how to complete performance evaluations for her secretary; she had the autonomy and discretion to review her secretary however she deemed appropriate.

14.  Similarly, Plaintiff's review of the paralegal who worked with her was used to determine employment decisions about this paralegal, including whether the paralegal should receive a pay increase and, if so, the amount of the increase. Plaintiff reviewed this paralegal on a variety of things she supervised him on -- putting together motions, finding evidentiary citations, checking case citations, creating chronologies, deposition and other fact summaries, and charts and witness binders.  Plaintiff's performance evaluations of the paralegal she worked with carried significant weight in determining the paralegal's compensation.  Steptoe used attorney evaluations as a factor in determining the compensation of paralegals, consistent with the Firm's compensation ranges for paralegals.  Plaintiff was not

instructed how to complete performance evaluations for the paralegal she worked with; she had the autonomy and discretion to review this paralegal however she deemed appropriate.

15.     Outside the annual employment evaluation process, Plaintiff also had the authority and discretion to report any criticisms about the performance of any staff member to me, and to recommend disciplinary action for such staff member.  Any performance criticisms or recommended discipline from Plaintiff would have carried significant weight with respect to employment decisions regarding the staff members. Performance criticisms from attorneys and attorney recommendations for discipline have served as the basis for discipline and adverse employment actions for secretaries, for example, on numerous occasions in the past.  I know this because I was responsible for handling secretary disciplinary issues -- such as investigating allegations of misconduct along with the Firm's Human Resources department and making and delivering final disciplinary decisions.

16.     All attorneys, including associates and contract attorneys, have authority to make or alter a staff member's schedule if support staff is needed for a case or matter.  For example, on multiple occasions, Plaintiff requested paralegal and secretarial coverage for nights and weekends to assist in trial preparation, even though such hours departed from the staff member's regularly-scheduled shifts.  In such instances, I ensured that support staff were available whenever Plaintiff needed—even if it meant having the support staff member work nights or weekends that they were not typically assigned.

17.     Plaintiff was responsible for the tasks she assigned to secretaries and paralegals.  If she believed that a staff member failed to perform a task correctly,

Plaintiff had the authority to correct any mistakes.  Plaintiff, as an attorney, was ultimately accountable for any errors committed on the tasks that she assigned to staff, and any mistakes by the staff could impact Plaintiff's performance review. Indeed, Steptoe specifically evaluated Plaintiff on her "Supervision and Management," including her "[a]bility to organize complex projects and supervise work of paralegals, law clerks or others" and her "[a]bility to assign work in clear, understandable fashion and perform follow-up supervision."  Attached hereto as Exhibit C is a true and correct copy of the portion of Plaintiff's 2014 performance evaluation that demonstrates how she was reviewed for her supervision and management of staff.  Certain parts of Exhibit C have been redacted for privacy reasons.

18.    Plaintiff also was involved in the hiring of attorneys and secretaries in the Century City office.  As an associate, Plaintiff would often be invited to participate in screening interviews for attorney and support staff candidates.  After the interviews, Plaintiff would provide the Firm with her assessments of the candidate.  As with all attorneys who conduct hiring interviews, Plaintiff provided a recommendation of whether she would hire the individual.  Plaintiff's recommendations and assessments of attorney and secretary candidates carried significant weight in the Firm's hiring decisions.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this <u>9th</u> day of August, 2017, at Los Angeles, California.



Linda G. Rosensweig

- 6 -
DECLARATION OF LINDA ROSENSWEIG ISO DEF.'S MOTION TO COMPEL ARBITRATION, DISMISS & STAY

# EXHIBIT A

Joel D. Kaufman
202 429 6288
jkaufman@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

**Steptoe**
STEPTOE & JOHNSON LLP

April 1, 2013

Ji-In Lee, Esq.
909 Montecito Drive
Los Angeles, CA 90031

Dear Ji-In:

Steptoe & Johnson LLP (the "Firm") is pleased to offer you employment under this Letter Contract as a Contract Attorney, on the terms and conditions provided below. Provided that you maintain your active status in good standing with the California Bar, you will be identified as an "attorney" on all external correspondence and on the Firm's internet page. Internally and on the Firm's intranet, you will be identified as an "associate".

1. **Services**. The Firm will employ you as a Contract Attorney to work primarily from our Century City office on matters related to the Firm's Litigation practice during the period described in the next paragraph. Your job duties may be extended or curtailed from time to time at the Firm's discretion. Your annual billable budget will be 2000 hours.

2. **Term**. The term of your employment will be for the period commencing on May 1, 2013 and continuing through April 30, 2014 ("Term") unless sooner terminated in accordance with paragraph 6 of this Letter Contract. Your employment may be further extended after the Term by a written agreement signed by you and the Firm specifically extending your employment and specifying the additional time period of employment. Neither you nor the Firm will have any obligation to extend your employment and either may decline to do so for any reason or for no reason at all.

3. **Compensation and Benefits**. For all of your services to the Firm, your compensation will be based on an annual salary of $85,000 paid in bi-weekly increments. Your compensation may be subject to further review by the Firm at any

Ji-In Lee, Esq.
April 1, 2013
Page 2



time during your employment, but your salary may not be reduced without your prior written consent. Your compensation will be subject to withholding for taxes and any employee share of insurance premiums and other benefits costs. You may be eligible for a bonus to be determined at the sole discretion of the Firm. Consistent with your annual billable budget and commitments to clients and the Firm, you may manage non-work time away from the office at your discretion, recognizing the need to be flexible due to client and Firm demands. Such time away should be coordinated in advance with your supervisor. In each twelve (12) month period of the Term, we would expect you to take up to three weeks of paid time off consistent with such commitments. Such paid time off does not carry over from one twelve-month term to the next, and there is no payment for such time upon termination from the Firm. If you provide thirty (30) days' notice of intent to end your employment as provided in paragraph 6 below, you shall not take such paid leave time in the last thirty (30) days of your employment. In addition to your salary, you will be entitled to receive (i) the life, health insurance, accident and disability benefits generally provided by the Firm to its associate attorneys and (ii) such reasonable sick leave as is approved by the Firm. You will also be eligible to make voluntary contributions to the Firm's 401(k) retirement plan with regard to compensation earned in accordance with the plan terms. You will not be eligible for the Firm's contribution under the Profit Sharing Plan or any other benefits other than those listed above. All employee benefits made available to you are subject to change or cancellation in the Firm's discretion on the same basis as applied to associate attorneys.

4. **Confidentiality**. In the course of performing your services, you will be exposed to certain sensitive, confidential, trade secret, non-public, and/or proprietary information and materials of the Firm (collectively "Confidential Information"). Except as required by law, you will accept and retain all Confidential Information in strictest confidence, and you will not disclose or reveal any Confidential Information to any other person, firm, corporation, or other entity without the Firm's prior written consent. You also agree not to use or exploit any Confidential Information (i) for any purpose other than performing your services, (ii) in any way detrimental to the Firm, or (iii) for your own benefit or the benefit of anyone other than the Firm.

All Confidential Information will remain the sole and exclusive property of the Firm, and, upon the Firm's request or upon the expiration or earlier termination of your employment, you will return to the Firm all Confidential Information (including all materials embodying or disclosing any Confidential Information) and all other property or material belonging to the Firm including, but not limited to, the BlackBerry which may be provided to you by the Firm. You shall not retain electronic or hard copies of Confidential Information (including, but not limited to that stored in computer memory, flash or thumb drives, or other data memory devices) or other Firm property or material after you return to the Firm all Confidential Information, property and materials pursuant

Ji-In Lee, Esq.
April 1, 2013
Page 3



to this Paragraph.  You agree that you will not assert any ownership interests in or rights to any Confidential Information.

Except to the extent prohibited by law, your obligations and agreements under this paragraph 4 will survive the termination of your employment.

5.  **Firm Rules**.  You agree to adhere to all of the Firm's rules, policies and procedures as in effect from time to time.  Such policies include without limitation, compliance with Firm policies regarding use of Firm technology, maintenance of all Firm and Firm client-related files in DeskSite, and protection of all such files from transfer to any computer or storage medium other than the Windows laptop issued to you by the Firm.  The Firm may amend, revise or discontinue any of its rules, policies and procedures as the Firm deems necessary or desirable.  You will also abide by all applicable laws and ethical obligations in the course of your services for the Firm or otherwise performing your obligations under this Letter Contract.

6.  **Termination**.  The Firm may terminate your employment, without cause on thirty (30) days' prior written notice or, in lieu of notice, may terminate your employment immediately, in which case the Firm will pay you the amount that you would have earned during a thirty-day notice period based on your annual salary rate.  You may terminate your employment with or without cause, with thirty (30) days' prior written notice of termination.  During any notice period, you are expected to continue to perform services.  The Firm may terminate you for cause without notice and without any payment.  For purposes of this Letter Contract, cause for termination means criminal conduct, material ethical violations, failure to comply with Firm policies, or persistent or serious failure to provide high-quality professional services to the Firm's clients or to work cooperatively with other Firm personnel.

7.  **Arbitration of Disputes**.  You and the Firm agree that any disputes concerning this Letter Contract; and any disputes that in any way concern or arise out of, directly or indirectly, your recruitment, employment with, or termination from the Firm, whether arising under this contract, or under any federal, state or local statute, regulation, ordinance or common law, shall be submitted to and decided by binding arbitration held in Los Angeles, Los Angeles County, California, before a single neutral arbitrator.  The only exceptions are:  claims arising out of the Firm's 401(k) plan or any other ERISA plan you participate in consistent with paragraph 3; and claims under state workers' compensation, unemployment insurance, or disability insurance laws.  In addition, this provision does not affect the right or ability of any government agency to bring an action on its own behalf, even if it is related to your employment or brought to the agency's attention by you.

Arbitration shall be administered by JAMS, Inc. in accordance with the JAMS Comprehensive Arbitration Rules and Procedures, unless you, the Firm, and JAMS

Ji-In Lee, Esq.
April 1, 2013
Page 4



agree to modify those Rules and Procedures.  A copy of the JAMS Comprehensive Arbitration Rules and Procedures is attached to this Letter Contract.  The rules are also available online at http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule%2016.1.  You may also call JAMS at 1-(800) 352-5267.  Discovery in any arbitration shall be conducted in accordance with the JAMS Rules, and JAMS Recommended Arbitration Discovery Protocols, which are available at http://www.jamsadr.com/arbitration-discovery-protocols.

Any arbitral award determination shall be final and binding on the parties, and shall be the exclusive method of resolution for the dispute(s).  The Firm will pay the cost of the arbitration.  The arbitrator shall resolve all disputes as to whether the matter can or should be arbitrated; apply the same statute of limitations that would apply in court; have only such authority to award equitable relief and damages as a court would have for the claims asserted; and issue a written decision stating the essential findings and reason upon which the award is issued.

The arbitrator's authority to resolve and make written awards is limited to claims between you and the Firm alone.  Arbitration under this provision shall proceed solely on an individual basis; no claims may be arbitrated on a class action basis or on any other purported representative capacity on behalf of others.  No arbitration award or decision will have preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

This agreement to arbitrate is freely negotiated between you and the Firm and is mutually entered into between the parties.  Each party understands and agrees that it is giving up certain rights otherwise afforded to it, including the right to litigate claims covered by this provision in court and the right to a jury trial.  Your signature at the end of this Letter Contract acknowledges that you have read this section, understand it, and agree with it.

8.  **Assignment and Binding Nature**.  Neither you nor the Firm shall assign or transfer any rights or obligations under this Letter Contract without the other party's advance written consent.  All agreements and obligations contained in this Letter Contract shall be binding upon and inure to the benefit of all parties, their representatives, successors and assigns.

9.  **Entire Agreement**.  This Letter Contract contains the complete and exclusive agreement and understanding between you and the Firm and supersedes all prior agreements, understandings, communications and proposals, oral or written, between the parties relating to the subject matter of this Letter Contract.  This Letter Contract may not be amended or modified except in a writing executed by you and the Firm.

Ji-In Lee, Esq.
April 1, 2013
Page 5



10. **Governing Laws**.  This Letter Contract shall be governed by, and construed in accordance with, the laws of the State of California.

11. **Captions**.  The captions to paragraphs of this Letter Contract are for convenience of reference only and shall not be considered to be a part of this Letter Contract or be used in determining the intent of the parties.

12. **Notices**.   Any communications, notice, consent or approval required or permitted under this Letter Contract shall be in writing and shall be deemed to have been duly given when received if sent by personal delivery or by registered or certified mail, return receipt requested, to the following address:

To You:

Ji-In Lee
909 Montecito Drive
Los Angeles, CA 90031

To the Firm:

Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Attn:  Rosemary K. Morgan

or to any other such address as the party to receive notice may designate by notice to the other party in accordance with the provisions of this paragraph.

13. **Non-Waiver**.  No waiver of any provisions of this Letter Contract shall be effective unless made in writing and signed by the waiving party.  No waiver of any provision of this Letter Contract shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof.

14. **Counterparts**.  This Letter Contract may be executed in one or more counterparts and by different parties on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15. **Malpractice Insurance**.  You will be covered by the Firm's malpractice insurance policy(ies) for all of the services that you provide to the Firm under this Letter Contract. Given this insurance coverage and to avoid potential conflict issues while you are employed by the Firm, you may not perform legal services for anyone other than Firm clients or work on any matter other than matters assigned or approved by the Firm.

Ji-In Lee, Esq.
April 1, 2013
Page 6



16.  **Acceptance**.  If you accept the Firm's offer of employment on the terms set forth above, please sign and return the enclosed copy of this Letter Contract.

Sincerely,

Joel D. Kaufman
Chair, Associates Committee

Agreed to and accepted this _9_ day of April, 2013.

Ji-In Lee

# EXHIBIT B

Joel D. Kaufman
202 429 6288
jkaufman@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

April 30, 2014

Ji-In Lee, Esq.
909 Montecito Drive
Los Angeles, CA 90031

Dear Ji-In:

Steptoe & Johnson LLP (the "Firm") is pleased to renew your employment under this Letter Contract as a Contract Attorney, on the terms and conditions provided below. Provided that you maintain your active status in good standing with the California Bar, you will be identified as an "attorney" on all external correspondence and on the Firm's internet page.   Internally and on the Firm's intranet, you will be identified as an "associate".

1. **Services**.  The Firm will employ you as a Contract Attorney to work primarily from our Century City office on matters related to the Firm's Litigation practice during the period described in the next paragraph.  Your job duties may be extended or curtailed from time to time at the Firm's discretion.  Your annual billable budget will be 2000 hours.

2. **Term**.  The term of your employment will be for the period commencing on May 1, 2014 and continuing through April 30, 2015 ("Term") unless sooner terminated in accordance with paragraph 6 of this Letter Contract.  Your employment may be further extended after the Term by a written agreement signed by you and the Firm specifically extending your employment and specifying the additional time period of employment. Neither you nor the Firm will have any obligation to extend your employment and either may decline to do so for any reason or for no reason at all.

3. **Compensation and Benefits**.   For all of your services to the Firm, your compensation will be based on an annual salary of $100,000 paid in bi-weekly increments.  Your compensation may be subject to further review by the Firm at any time during your employment, but your salary may not be reduced without your prior



written consent.  Your compensation will be subject to withholding for taxes and any employee share of insurance premiums and other benefits costs.  You may be eligible for a bonus to be determined at the sole discretion of the Firm.  Consistent with your annual billable budget and commitments to clients and the Firm, you may manage non-work time away from the office at your discretion, recognizing the need to be flexible due to client and Firm demands.  Such time away should be coordinated in advance with your supervisor.  In each twelve (12) month period of the Term, we would expect you to take up to three weeks of paid time off consistent with such commitments.  Such paid time off does not carry over from one twelve-month term to the next, and there is no payment for such time upon termination from the Firm.  If you provide thirty (30) days' notice of intent to end your employment as provided in paragraph 6 below, you shall not take such paid leave time in the last thirty (30) days of your employment.  In addition to your salary, you will be entitled to receive (i) the life, health insurance, accident and disability benefits generally provided by the Firm to its associate attorneys and (ii) such reasonable sick leave as is approved by the Firm.  You will also be eligible to make voluntary contributions to the Firm's 401(k) retirement plan with regard to compensation earned in accordance with the plan terms.  You will not be eligible for the Firm's contribution under the Profit Sharing Plan or any other benefits other than those listed above.  All employee benefits made available to you are subject to change or cancellation in the Firm's discretion on the same basis as applied to associate attorneys.

4.  **Confidentiality**.  In the course of performing your services, you will be exposed to certain sensitive, confidential, trade secret, non-public, and/or proprietary information and materials of the Firm (collectively "Confidential Information").  Except as required by law, you will accept and retain all Confidential Information in strictest confidence, and you will not disclose or reveal any Confidential Information to any other person, firm, corporation, or other entity without the Firm's prior written consent.  You also agree not to use or exploit any Confidential Information (i) for any purpose other than performing your services, (ii) in any way detrimental to the Firm, or (iii) for your own benefit or the benefit of anyone other than the Firm.

All Confidential Information will remain the sole and exclusive property of the Firm, and, upon the Firm's request or upon the expiration or earlier termination of your employment, you will return to the Firm all Confidential Information (including all materials embodying or disclosing any Confidential Information) and all other property or material belonging to the Firm including, but not limited to, the BlackBerry which may be provided to you by the Firm.  You shall not retain electronic or hard copies of Confidential Information (including, but not limited to that stored in computer memory, flash or thumb drives, or other data memory devices) or other Firm property or material after you return to the Firm all Confidential Information, property and materials pursuant

Ji-In Lee, Esq.
April 30, 2014
Page 3



to this Paragraph.  You agree that you will not assert any ownership interests in or rights to any Confidential Information.

Except to the extent prohibited by law, your obligations and agreements under this paragraph 4 will survive the termination of your employment.

5.  **Firm Rules**.  You agree to adhere to all of the Firm's rules, policies and procedures as in effect from time to time.  Such policies include without limitation, compliance with Firm policies regarding use of Firm technology, maintenance of all Firm and Firm client-related files in DeskSite, and protection of all such files from transfer to any computer or storage medium other than the Windows laptop issued to you by the Firm.  The Firm may amend, revise or discontinue any of its rules, policies and procedures as the Firm deems necessary or desirable.  You will also abide by all applicable laws and ethical obligations in the course of your services for the Firm or otherwise performing your obligations under this Letter Contract.

6.  **Termination**.  The Firm may terminate your employment, without cause on thirty (30) days' prior written notice or, in lieu of notice, may terminate your employment immediately, in which case the Firm will pay you the amount that you would have earned during a thirty-day notice period based on your annual salary rate.  You may terminate your employment with or without cause, with thirty (30) days' prior written notice of termination.  During any notice period, you are expected to continue to perform services.  The Firm may terminate you for cause without notice and without any payment.  For purposes of this Letter Contract, cause for termination means criminal conduct, material ethical violations, failure to comply with Firm policies, or persistent or serious failure to provide high-quality professional services to the Firm's clients or to work cooperatively with other Firm personnel.

7.  **Arbitration of Disputes**.  You and the Firm agree that any disputes concerning this Letter Contract; and any disputes that in any way concern or arise out of, directly or indirectly, your recruitment, employment with, or termination from the Firm, whether arising under this contract, or under any federal, state or local statute, regulation, ordinance or common law, shall be submitted to and decided by binding arbitration held in Los Angeles, Los Angeles County, California, before a single neutral arbitrator.  The only exceptions are:  claims arising out of the Firm's 401(k) plan or any other ERISA plan you participate in consistent with paragraph 3; and claims under state workers' compensation, unemployment insurance, or disability insurance laws.  In addition, this provision does not affect the right or ability of any government agency to bring an action on its own behalf, even if it is related to your employment or brought to the agency's attention by you.

Arbitration shall be administered by JAMS, Inc. in accordance with the JAMS Comprehensive Arbitration Rules and Procedures, unless you, the Firm, and JAMS

Ji-In Lee, Esq.
April 30, 2014
Page 4



agree to modify those Rules and Procedures.  A copy of the JAMS Comprehensive Arbitration Rules and Procedures is attached to this Letter Contract.  The rules are also available online at http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule%2016.1.  You may also call JAMS at 1-(800) 352-5267.  Discovery in any arbitration shall be conducted in accordance with the JAMS Rules, and JAMS Recommended Arbitration Discovery Protocols, which are available at http://www.jamsadr.com/arbitration-discovery-protocols.

Any arbitral award determination shall be final and binding on the parties, and shall be the exclusive method of resolution for the dispute(s).  The Firm will pay the cost of the arbitration.  The arbitrator shall resolve all disputes as to whether the matter can or should be arbitrated; apply the same statute of limitations that would apply in court; have only such authority to award equitable relief and damages as a court would have for the claims asserted; and issue a written decision stating the essential findings and reason upon which the award is issued.

The arbitrator's authority to resolve and make written awards is limited to claims between you and the Firm alone.  Arbitration under this provision shall proceed solely on an individual basis; no claims may be arbitrated on a class action basis or on any other purported representative capacity on behalf of others.  No arbitration award or decision will have preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

This agreement to arbitrate is freely negotiated between you and the Firm and is mutually entered into between the parties.  Each party understands and agrees that it is giving up certain rights otherwise afforded to it, including the right to litigate claims covered by this provision in court and the right to a jury trial.  Your signature at the end of this Letter Contract acknowledges that you have read this section, understand it, and agree with it.

8.  **Assignment and Binding Nature**.  Neither you nor the Firm shall assign or transfer any rights or obligations under this Letter Contract without the other party's advance written consent.  All agreements and obligations contained in this Letter Contract shall be binding upon and inure to the benefit of all parties, their representatives, successors and assigns.

9.  **Entire Agreement**.  This Letter Contract contains the complete and exclusive agreement and understanding between you and the Firm and supersedes all prior agreements, understandings, communications and proposals, oral or written, between the parties relating to the subject matter of this Letter Contract.  This Letter Contract may not be amended or modified except in a writing executed by you and the Firm.

Ji-In Lee, Esq.
April 30, 2014
Page 5



10. **Governing Laws**.  This Letter Contract shall be governed by, and construed in accordance with, the laws of the State of California.

11. **Captions**.  The captions to paragraphs of this Letter Contract are for convenience of reference only and shall not be considered to be a part of this Letter Contract or be used in determining the intent of the parties.

12. **Notices**.   Any communications, notice, consent or approval required or permitted under this Letter Contract shall be in writing and shall be deemed to have been duly given when received if sent by personal delivery or by registered or certified mail, return receipt requested, to the following address:

To You:

Ji-In Lee
909 Montecito Drive
Los Angeles, CA 90031

To the Firm:

Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Attn:  Rosemary K. Morgan

or to any other such address as the party to receive notice may designate by notice to the other party in accordance with the provisions of this paragraph.

13. **Non-Waiver**.  No waiver of any provisions of this Letter Contract shall be effective unless made in writing and signed by the waiving party.  No waiver of any provision of this Letter Contract shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof.

14. **Counterparts**.  This Letter Contract may be executed in one or more counterparts and by different parties on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15. **Malpractice Insurance**.  You will be covered by the Firm's malpractice insurance policy(ies) for all of the services that you provide to the Firm under this Letter Contract. Given this insurance coverage and to avoid potential conflict issues while you are employed by the Firm, you may not perform legal services for anyone other than Firm clients or work on any matter other than matters assigned or approved by the Firm.

Ji-In Lee, Esq.
April 30, 2014
Page 6



16.   **Acceptance**.   If you accept the Firm's offer of employment on the terms set forth above, please sign and return the enclosed copy of this Letter Contract.

Sincerely,

Joel D. Kaufman
Chair, Associates Committee

Agreed to and accepted this ___7___ day of May, 2014.


Ji-In Lee



THE RESOLUTION EXPERTS®

## JAMS Comprehensive Arbitration Rules & Procedures

### JAMS Comprehensive Arbitration Rules & Procedures

*Effective October 1, 2010*

> JAMS now offers Optional Expedited Arbitration Procedures,
> whereby parties can choose a process that limits depositions,
> document requests and e-discovery. When parties utilizing JAMS
> Comprehensive Arbitration Rules elect to use these procedures,
> they agree to the voluntary and informal exchange of all non-
> privileged documents and other information relevant to the
> dispute. See Comprehensive Rules 16.1 and 16.2.

**Download JAMS Comprehensive Arbitration Rules
in PDF Format in English or Spanish**

NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949-224-1810.

| Rule 1. | Scope of Rules |
| Rule 2. | Party-Agreed Procedures |
| Rule 3. | Amendment of Rules |
| Rule 4. | Conflict with Law |
| Rule 5. | Commencing an Arbitration |
| Rule 6. | Preliminary and Administrative Matters |
| Rule 7. | Number of Arbitrators and Appointment of Chairperson |
| Rule 8. | Service |
| Rule 9. | Notice of Claims |
| Rule 10. | Changes of Claims |
| Rule 11. | Interpretation of Rules and Jurisdictional Challenges |
| Rule 12. | Representation |
| Rule 13. | Withdrawal from Arbitration |
| Rule 14. | *Ex Parte* Communications |
| Rule 15. | Arbitrator Selection and Replacement |
| Rule 16. | Preliminary Conference |
| Rule 16.1 | Application of Expedited Procedures |
| Rule 16.2 | Where Expedited Procedures Are Applicable |
| Rule 17. | Exchange of Information |
| Rule 18. | Summary Disposition of a Claim or Issue |

| Rule 19. | Scheduling and Location of Hearing |
| Rule 20. | Pre-Hearing Submissions |
| Rule 21. | Securing Witnesses and Documents for the Arbitration Hearing |
| Rule 22. | The Arbitration Hearing |
| Rule 23. | Waiver of Hearing |
| Rule 24. | Awards |
| Rule 25. | Enforcement of the Award |
| Rule 26. | Confidentiality and Privacy |
| Rule 27. | Waiver |
| Rule 28. | Settlement and Consent Award |
| Rule 29. | Sanctions |
| Rule 30. | Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability |
| Rule 31. | Fees |
| Rule 32. | Bracketed (or High-Low) Arbitration Option |
| Rule 33. | Final Offer (or Baseball) Arbitration Option |
| Rule 34. | Optional Arbitration Appeal Procedure |

**Rule 1. Scope of Rules**

(a) The JAMS Comprehensive Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, any disputed claim or counterclaim that exceeds $250,000, not including interest or attorneys' fees, unless other Rules are prescribed.

(b) The Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c) The authority and duties of JAMS are prescribed in the Agreement of the Parties and in these Rules, and may be carried out through such representatives as it may direct.

(d) JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e) The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f) "Electronic filing" (e-file) means the electronic transmission of documents to and from JAMS and other Parties for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents via JAMS Electronic Filing System to a Party, attorney or representative under these Rules.

**Rule 2. Party-Agreed Procedures**

The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

**Rule 3. Amendment of Rules**

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

**Rule 4. Conflict with Law**

If any of these Rules, or modification of these Rules agreed on by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

**Rule 5. Commencing an Arbitration**

(a) The Arbitration is deemed commenced when JAMS confirms in a Commencement Letter its receipt of one of the following:

    (i) A post-dispute Arbitration agreement fully executed by all Parties and that specifies JAMS administration or use of any JAMS Rules; or

    (ii) A pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim and that specifies JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

    (iii) A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

    (iv) A copy of a court order compelling Arbitration at JAMS.

(b) The Commencement Letter shall confirm which one of the above requirements for commencement has been met, that JAMS has received all payments required under the applicable fee schedule, and that the claimant has provided JAMS with contact information for all Parties along with evidence that the Demand has been served on all Parties.

(c) If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate and, pursuant to Rule 22(j), the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d) The date of commencement of the Arbitration is the date of the Commencement Letter, but is not intended to be applicable to any legal requirements such as the statute of limitations, any contractual limitations period, or claims notice requirements. The term "commencement" as used in this Rule is intended only to pertain to the operation of this and other rules (such as Rules 3, 9(a), 9(c), 13(a), 17(a) and 31(a)).

**Rule 6. Preliminary and Administrative Matters**

(a) JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b) If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing such factors as the subject matter of the dispute, the convenience of the Parties and witnesses and the relative resources of the Parties shall be considered.

(c) If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d) JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within 30 calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for 30 calendar days following the conclusion of the Arbitration.

(e) Unless the Parties' agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

    (i) If a Party files more than one Arbitration with JAMS, JAMS may consolidate the Arbitrations into a single arbitration.

    (ii) Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

    (iii) Where a Demand or Demands for Arbitration is or are submitted naming Parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases

shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f) Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances the Arbitrator deems relevant and applicable.

### Rule 7. Number of Arbitrators and Appointment of Chairperson

(a) The Arbitration shall be conducted by one neutral Arbitrator unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b) In cases involving more than one Arbitrator the Parties shall agree on, or in the absence of agreement JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed to produce documents.

(c) Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party unless the Parties have agreed that they shall be non-neutral.

### Rule 8. Service

(a) The Arbitrator may at any time require electronic filing and service of documents in an Arbitration. If an Arbitrator requires electronic filing, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of all documents filed through JAMS Electronic Filing System. Any document filed electronically shall be considered as filed with JAMS when the transmission to JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date. Upon completion of filing, JAMS Electronic Filing System shall issue a confirmation receipt that includes the date and time of receipt. The confirmation receipt shall serve as proof of filing.

(b) Every document filed with JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to JAMS Electronic Filing System, and shall bear the typed name, address, telephone number and Bar number of a signing attorney. Documents containing signatures of third parties (i.e., unopposed motions, affidavits, stipulations, etc.) may also be filed electronically by indicating that the original signatures are maintained by the filing Party in paper format.

(c) Delivery of e-service documents through JAMS Electronic Filing System to other registered users shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service completes the transmission of the electronic document(s) to JAMS Electronic Filing System for e-filing and/or e-service. Upon actual or constructive receipt of the electronic document(s) by the Party to be served, a Certificate of Electronic Service shall be issued by JAMS Electronic Filing System to the Party initiating e-service and that Certificate shall serve as proof of service. Any Party who ignores or attempts to refuse e-service shall be deemed to have received the electronic document(s) 72 hours following the transmission of the electronic document(s) to JAMS Electronic Filing System.

(d) If an electronic filing or service does not occur because of (1) an error in the transmission of the document to JAMS Electronic Filing System or served Party that was unknown to the sending Party; (2) a failure to process the electronic document when received by JAMS Electronic Filing System; (3) the Party being erroneously excluded from the service list; or (4) other technical problems experienced by the filer, the Arbitrator or JAMS may for good cause shown permit the document to be filed *nunc pro tunc* to the date it was first attempted to be sent electronically. Or, in the case of service, the Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e) For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document. Service by electronic mail or facsimile transmission is considered effective upon transmission, but only if followed within one week of delivery by service of an appropriate number of copies and originals by one of the other service methods.

(f) In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period.

**Rule 9. Notice of Claims**

(a) Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b) Within fourteen (14) calendar days after the commencement of an Arbitration, Claimant shall submit to JAMS and serve on the other Parties a notice of its claim and remedies sought. Such notice shall consist of either a Demand for Arbitration or a copy of a Complaint previously filed with a court. (In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.)

(c) Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and must so submit and serve a statement of any affirmative defenses (including jurisdictional challenges) or counterclaims it may have.

(d) Within fourteen (14) calendar days of service of a counterclaim, a claimant may submit to JAMS and serve on other Parties a response to such counterclaim and must so submit and serve a statement of any affirmative defenses (including jurisdictional challenges) it may have.

(e) Any claim or counterclaim to which no response has been served will be deemed denied.

**Rule 10. Changes of Claims**

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted except with the Arbitrator's approval. A Party may request a Hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(d).

Return to top

**Rule 11. Interpretation of Rules and Jurisdictional Challenges**

(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Whenever in these Rules a matter is to be determined by JAMS (such as in Rules 6; 11(d); 15(d), (f) or (g); and 31 (d)), such determination shall be made in accordance with JAMS administrative procedures.

(c) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(d) Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(e) The Arbitrator may upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may be altered only in accordance with Rules 22(i) or 24.

**Rule 12. Representation**

(a) The Parties may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone and fax numbers and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b) Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone and fax numbers and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new

representative, has been obtained and shall state the effective date of the new representation.

**Rule 13. Withdrawal from Arbitration**

(a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b) A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and on the Arbitrator. However, the opposing Parties may, within fourteen (14) calendar days of service of notice of the withdrawal of the claim or counterclaim, request that the Arbitrator order that the withdrawal be with prejudice. If such a request is made, it shall be determined by the Arbitrator.

**Rule 14. *Ex Parte* Communications**

(a) No Party may have any *ex parte* communication with a neutral Arbitrator jointly selected by the Parties. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written correspondence as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b) A Party may have *ex parte* communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c) The Parties may agree to permit more extensive *ex parte* communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral arbitrator may also be permitted by applicable law and rules of ethics.

**Rule 15. Arbitrator Selection and Replacement**

(a) Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b) If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c) Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d) If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

(e) If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f) Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities are adverse for purposes of Arbitrator selection, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

(g) If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h) Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. The obligation of the Arbitrator to make all required disclosures continues throughout the Arbitration process. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it.

(i) At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was

selected. A challenge for cause must be in writing and exchanged with opposing Parties who may respond within seven (7) calendar days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j) Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the Party who did not appoint that Arbitrator.

**Rule 16. Preliminary Conference**

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a) The exchange of information in accordance with Rule 17 or otherwise;

(b) The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c) The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d) The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e) The attendance of witnesses as contemplated by Rule 21;

(f) The scheduling of any dispositive motion pursuant to Rule 18;

(g) The premarking of exhibits, the preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h) The form of the Award; and

(i) Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

**Rule 16.1 Application of Expedited Procedures**

(a) If these Expedited Procedures are referenced in the Parties' agreement to arbitrate or are later agreed to by all Parties, they shall be applied by the Arbitrator.

(b) If the Claimant opts in to the Expedited Procedures in the Demand for Arbitration, the Respondent shall indicate within seven (7) calendar days of notice thereof whether it agrees to the Expedited Procedures.

(c) If the Respondent declines to agree to the Expedited Procedures, each Party shall have a client or client representative present at the first Preliminary Conference (which should, if feasible, be an in-person conference) unless excused by the Arbitrator for good cause.

**Rule 16.2 Where Expedited Procedures Are Applicable**

(a) The Arbitrator shall require compliance with Rule 17(a) prior to conducting the first Preliminary Conference. Each Party shall confirm in writing to the Arbitrator that it has so complied or shall indicate any limitations on full compliance and the reasons therefor.

(b) Document requests shall (1) be limited to documents that are directly relevant to the matters in dispute or to its outcome; (2) be reasonably restricted in terms of time frame, subject matter and persons or entities to which the requests pertain; and (3) not include broad phraseology such as "all documents directly or indirectly related to." The Requests shall not be encumbered with extensive "definitions" or "instructions." The Arbitrator may edit or limit the number of requests.

(c) E-Discovery shall be limited as follows:

(i) There shall be production of electronic documents only from sources used in the ordinary course of business. Absent a showing of compelling need, no such documents are required to be produced from backup servers, tapes or other media.

(ii) Absent a showing of compelling need, the production of electronic documents shall normally be made on the basis of generally available technology in a searchable format that is usable by the requesting

Party and convenient and economical for the producing Party. Absent a showing of compelling need, the Parties need not produce metadata, with the exception of header fields for email correspondence.

(iii) The description of custodians from whom electronic documents may be collected should be narrowly tailored to include only those individuals whose electronic documents may reasonably be expected to contain evidence that is material to the dispute.

(iv) Where the costs and burdens of e-discovery are disproportionate to the nature of the dispute or to the amount in controversy, or to the relevance of the materials requested, the Arbitrator may either deny such requests or order disclosure on the condition that the requesting Party advance the reasonable cost of production to the other side, subject to the allocation of costs in the final award.

(v) The Arbitrator may vary these rules after discussion with the Parties at the Preliminary Conference.

(d) Depositions of percipient witnesses shall be limited as follows:

(i) The limitation of one discovery deposition per side (Rule 17(b)) shall be applied by the Arbitrator unless it is determined, based on all relevant circumstances, that more depositions are warranted. The Arbitrator shall consider the amount in controversy, the complexity of the factual issues, the number of Parties and the diversity of their interests and whether any or all of the claims appear, on the basis of the pleadings, to have sufficient merit to justify the time and expense associated with the requested discovery.

(ii) The Arbitrator shall also consider the additional factors listed in the JAMS Recommended Arbitration Discovery Protocols for Domestic Commercial Cases.

(e) Expert Depositions, if any, shall be limited as follows: Where written expert reports are produced to the other side in advance of the Hearing (Rule 17(a)), expert depositions may be conducted only by agreement of the Parties or by order of the Arbitrator for good cause shown.

(f) Discovery disputes shall be resolved on an expedited basis.

(i) Where there is a panel of three arbitrators, the Parties are encouraged to agree, by rule or otherwise, that the Chair or another member of the panel is authorized to resolve discovery issues, acting alone.

(ii) Lengthy briefs on discovery matters should be avoided. In most cases, the submission of brief letters will sufficiently inform the arbitrator with regard to the issues to be decided.

(iii) The Parties should meet and confer in good faith prior to presenting any issues for the arbitrator's decision.

(iv) If disputes exist with respect to some issues, that should not delay the Parties' discovery on remaining issues.

(g) The Arbitrator shall set a discovery cutoff not to exceed 75 calendar days after the Preliminary Conference for percipient discovery and not to exceed 105 calendar days for expert discovery (if any). These dates may be extended by the Arbitrator for good cause shown.

(h) Dispositive motions (Rule 18) shall not be permitted, except as set forth in the JAMS Recommended Arbitration Discovery Protocols for Domestic Commercial Cases or unless the Parties agree to that procedure.

(i) The hearing shall commence within 60 calendar days after the cutoff for percipient discovery. Consecutive hearing days shall be established unless otherwise agreed by the Parties or ordered by the Arbitrator. These dates may be extended by the Arbitrator for good cause shown.

(j) The Arbitrator may alter any of these Procedures for good cause.

## Rule 17. Exchange of Information

(a) The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, and names of individuals whom they may call as witnesses at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at

the Preliminary Conference.

(b) Each Party may take one deposition of an opposing Party or of one individual under the control of the opposing Party. The Parties shall attempt to agree on the time, location and duration of the deposition. If the Parties do not agree, these issues shall be determined by the Arbitrator. The necessity of additional depositions shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness.

(c) As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d) The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

## Rule 18. Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the request.

## Rule 19. Scheduling and Location of Hearing

(a) The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b) If a Party has failed to participate in the Arbitration process, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c) The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena *duces tecum* to a third-party witness.

## Rule 20. Pre-Hearing Submissions

(a) Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; (3) any written expert reports that may be introduced at the Arbitration Hearing; and (4) a list of all exhibits intended to be used at the Hearing. The Parties should exchange with each other a copy of any such exhibits to the extent that it has not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b) The Arbitrator may require that each Party submit concise written statements of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## Rule 21. Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena *duces tecum* shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

### Rule 22. The Arbitration Hearing

(a) The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined reasonable and appropriate to do so.

(b) The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c) The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise in the discretion of the Arbitrator.

(d) Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e) The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as the Arbitrator deems appropriate.

(f) The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g) The Hearing, or any portion thereof, may be conducted telephonically with the agreement of the Parties or in the discretion of the Arbitrator.

(h) When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date agreed upon by the Arbitrator and the Parties in order to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments.

(i) At any time before the Award is rendered, the Arbitrator may, *sua sponte* or on application of a Party for good cause shown, re-open the Hearing. If the Hearing is re-opened and the re-opening prevents the rendering of the Award within the time limits specified by these Rules, the time limits will be extended until the reopened Hearing is declared closed by the Arbitrator.

(j) The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k) Any Party may arrange for a stenographic or other record to be made of the Hearing and shall inform the other Parties in advance of the Hearing.

(i) The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii) If there is no agreement to share the cost of the stenographic record, it may not be provided to the Arbitrator and may not be used in the proceeding unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii) If the Parties agree to an Optional Arbitration Appeal Procedure (Rule 34), they shall ensure that a stenographic or other record is made of the Hearing and shall share the cost of that record.

(iv) The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

### Rule 23. Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

### Rule 24. Awards

(a) The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing as defined in Rule 22(h) or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b) Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c) In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator shall be guided by the rules of law and equity that the Arbitrator deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d) In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e) Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f) The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses unless such an allocation is expressly prohibited by the Parties' agreement. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g) The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h) The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award.

(i) After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j) Within seven (7) calendar days after service of the Award by JAMS, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31(c)), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file any objection. The Arbitrator may make any necessary and appropriate correction to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after the Arbitrator's proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k) The Award is considered final, for purposes of either an Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.

### Rule 25. Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 *et seq.* or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

**Rule 26. Confidentiality and Privacy**

(a) JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b) The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c) Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

**Rule 27. Waiver**

(a) If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service of the Arbitrator.

**Rule 28. Settlement and Consent Award**

(a) The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree pursuant to Rule 28(b).

(b) The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c) If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

**Rule 29. Sanctions**

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; assessment of any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

Return to top

**Rule 30. Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability**

(a) The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b) The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside Parties arising from the Arbitration.

(c) The Parties agree that neither the Arbitrator, nor the Case Manager nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

### Rule 31. Fees

(a) Each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b) JAMS requires that the Parties deposit the fees and expenses for the Arbitration prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its *pro rata* or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c) The Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d) Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS assessment of fees. JAMS shall determine whether the interests between entities are adverse for purpose of fees, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

### Rule 32. Bracketed (or High-Low) Arbitration Option

(a) At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b) JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c) The Arbitrator shall render the Award in accordance with Rule 24.

(d) In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

### Rule 33. Final Offer (or Baseball) Arbitration Option

(a) Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide a copy of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b) If the Arbitrator has been informed of the written proposals, in rendering the Award the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c) If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals, and the closest of the last proposals will become the Award.

(d) Other than as provided herein, the provisions of Rule 24 shall be applicable.

### Rule 34. Optional Arbitration Appeal Procedure

At any time before the Award becomes final pursuant to Rule 24, the Parties may agree to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedure to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

Return to top

# EXHIBIT C

viDesktop                                                                                     Page 1 of 8

## 2014 Contract Attorney / Other Professional
## Summary Evaluation Report

Evaluatee: Ji–In Lee

### Evaluatee Profile

| Profile | Value |
| --- | --- |
| Evaluating Partner |  REDACTED |

| 2013 Year-End Financial Data | **2013 BILLABLE** | **2013 NON-BILLABLE (LEGAL)** | **2013 NON-BILLABLE (OTHER)** |
| --- | --- | --- | --- |
| |  | | |

| Evaluation Period | May 1–Dec. 31, 2013 |
| --- | --- |

### Level of Contact

The evaluation is based on input from the following supervising attorneys:

High

 REDACTED

Moderate    REDACTED

Low

### Comments Regarding Work

Comments relating to the work performed and the degree of difficulty and/or level of responsibility required:

| Evaluator | Response |
| --- | --- |
|  | |

viDesktop

## Management and Work Relations

### Supervision and Management

Ability to organize complex projects and supervise work of paralegals, law clerks or others. Ability to assign work in clear, understandable fashion and perform follow-up supervision.

Exceptional

                 [4 Evaluating Attorneys]

Commendable

REDACTED                [1 Evaluating Attorney]

Acceptable

Needs Improvement

Needs Significant Improvement

Not Observed/Unable to Assess

### Relationship with Firm Colleagues

Ability to work with colleagues as a team member, cooperate, provide leadership or be a follower as necessary. Ability to work with firm staff cooperatively and with tact.



### Relationship with Clients and Others Outside the Firm

Ability to understand, work with, and be responsive to the needs of the clients. Ability to work effectively with and/or make a favorable impression upon counsel, government personnel, public, etc.

