1
2
3
4
5
6
7
8

LORI E. ANDRUS (SBN 205816)
lori@andrusanderson.com
PAUL LAPRAIRIE (SBN 312956)
paul.laprairie@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone:   (415) 986-1400
Facsimile:    (415) 986-1474

*Attorneys for Plaintiff Ji-In Houck*

9
10
11
12

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| JI-IN HOUCK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STEPTOE & JOHNSON LLP,<br><br>Defendant. | Case No.  2:17-cv-04595-ODW-AFM<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT STEPTOE & JOHNSON LLP'S MOTION TO COMPEL ARBITRATION, DISMISS THE COMPLAINT AND STAY ACTION**<br><br>Judge:       Hon. Otis D. Wright II<br>Date:        September 11, 2017<br>Time:        1:30 p.m.<br>Courtroom: 5D, 5th Floor |

24
25
26
27
28

## **TABLE OF CONTENTS**

I.  INTRODUCTION.......................................................................................... 1

II. ARGUMENT .............................................................................................. 1

A. The Arbitration Agreement is Unenforceable Pursuant to *Morris*................. 1

B. Plaintiff Houck Is Entitled to the Protections of the NLRA. ......................... 2

    1.  Defendant Has Not Met Its Burden to Show Plaintiff Houck Is a
    Supervisor Under the NLRA. ................................................................... 3

    2.  Plaintiff Houck Did Not Have the Authority Responsibly to Direct
    Secretaries or Paralegals. ....................................................................... 5

        a)  Defendant's Conclusory Affidavit Does Not Demonstrate
        Plaintiff Houck Had Authority Responsibly to Direct...................... 5

        b)  The Evidence Defendant Cites Shows That Plaintiff Houck's
        Purported Supervisory Interactions Lacked Independent
        Judgment. ....................................................................................... 6

        c)  Plaintiff Houck Was Not Accountable for the Actions of
        Paralegals or Secretaries. .............................................................. 7

    3.  Plaintiff Houck Did Not Have Authority to Discipline Secretaries
    or Paralegals........................................................................................ 10

    4.  Plaintiff Houck Did Not Have Authority to Hire.................................... 11

    5.  Plaintiff Houck Did Not Devote a Regular and Substantial Portion
    of Her Work Time to Any Supervisory Functions................................... 12

    6.  This Court Cannot Order Plaintiff Houck to Arbitrate Her Claims
    Individually Under Controlling Ninth Circuit Precedent........................ 13

C. The Arbitration Agreement is Unenforceable Because It Is
Unconscionable. .......................................................................................... 14

    1.  The Agreement Is Procedurally Unconscionable.................................... 14

    2.  The Agreement Is Substantively Unconscionable. ................................. 15

D. The Court Has No Authority to Issue a Stay and a Stay Is Not
Warranted in Any Event. ............................................................................. 17

    1.  The Court Is Bound to Apply *Morris* Without Delay............................. 17

    2.  On Balance, a Stay Is Not Warranted. ................................................... 18

E. NUMEROSITY .......................................................................................... 23

F. NOTICE SHOULD ISSUE.......................................................................... 24

III.CONCLUSION ........................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Advanced Mining Grp.*
  260 N.L.R.B. 486 (1982) ...................................................................10

*Allied Aviation Serv. Co. of New Jersey v. NLRB*
  854 F.3d 55 (D.C. Cir. 2017) .............................................................10

*Alvarado v. United States*
  No. CV 16-4411-GW, 2016 WL 6302517 (C.D. Cal. Oct. 14, 2016) ...........17

*Am. Pipe & Constr. Co. v. Utah*
  414 U.S. 538 (1974) ...........................................................................24

*Armendariz v. Found. Health Psychcare Servs., Inc.*
  24 Cal. 4th 83 (2000) *abrogated on other grounds by AT&T*
  *Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .....................14, 16

*Avante at Wilson, Inc.*
  348 N.L.R.B. 1056 (2006) ....................................................................4

*Beverly Enters.-Mass., Inc. v. NLRB*
  165 F.3d 960 (D.C. Cir. 1999) ......................................................10, 11

*Beverly Enters.-Minn., Inc.*
  348 N.L.R.B. 727 (2006) ...............................................................4, 6, 8

*Blue Cross Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*
  490 F.3d 718 (9th Cir. 2007) ...............................................................20

*Bolton v. Sprint/United Mgmt. Co.*
  No. 05-2361-JWL, 2007 WL 756644 (D. Kan. Mar. 8, 2007) .....................22

*Bradberry v. T-Mobile U.S.A., Inc.*
  No. 06-06567 CW, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) .......20, 23, 24

*Brenner v. Proctor & Gamble Co.*
  No. SACV 16-1093-JLS (JCGx), 2016 WL 8192946 (C.D. Cal.
  Oct. 20, 2016)...................................................................................20

*Bui v. Northop Grumman Sys., Corp.*
  No. 15cv1397, 2017 WL 2537232 (S.D. Cal. Jun. 12, 2017) ....................22

*Campanelli v. ImageFIRST Healthcare Laundry Specialists Inc.*
  No. 15-cv-04456-PJH, 2017 WL 2929450 (N.D. Cal. Jul. 10, 2017).............18

*Cashon v. Kindred Healthcare Operating, Inc.*
  No. 16-cv-04889-RS, 2016 WL 6611031 (N.D. Cal. Nov. 9, 2016) ..............20

*Chevron, U.S.A., Inc.*
  309 N.L.R.B. 59 (1992) .......................................................................10

*CIGNA HealthCare of St. Louis, Inc. v. Kaiser*
  294 F.3d 849 (7th Cir. 2002)...........................................................20, 21

*Circuit City Stores, Inc. v. Adams*
  279 F.3d 889 (9th Cir. 2002).................................................................16

*Clinton v. Jones*
  520 U.S. 681 (1997) ............................................................................23

*CMAX, Inc. v. Hall*
  300 F.2d 265 (9th Cir. 1962)............................................................18

*Covillo v. Specialty's Café*
  No. C 11-00594 DMR, 2012 WL 4953085 (N.D. Cal. Oct. 17, 2012) ............................................................................................23

*Culloty v. Union Pac. R.R. Co.*
  No. C 08-3561 SI, 2009 WL 1690520 (N.D. Cal. Jun. 16, 2009)...................22

*Diaz v. AT&T*
  752 F.2d 1356 (9th Cir. 1985)............................................................22

*Diaz v. Trust Territory of the Pac. Islands*
  876 F.2d 1401 (9th Cir. 1989)............................................................24

*Echevarria v. Aerotek, Inc.*
  No. 16-cv-04041-BLF, 2017 WL 24877 (N.D. Cal. Jan. 3, 2017) ................19

*Entergy Mississippi, Inc.*
  357 N.L.R.B. 2150 (2011) ................................................................9

*Foster v. Chatman*
  136 S. Ct. 1737 (2016) ....................................................................19

*Frenchtown Acquisition Co. v. NLRB*
  683 F.3d 298 (6th Cir. 2012)....................................................... passim

*George C. Foss Co. v. NLRB*
  752 F.2d 1407 (9th Cir. 1985)............................................................12

*Golden Crest Healthcare Center*
  348 N.L.R.B. 727 (2006) .................................................................9

*Hardman v. Tri-Financial, LLC*
  No. 09-CV-0081-IEG (AJB), 2010 WL 11508879 (S.D. Cal. Feb. 3, 2010) ....................................................................................24

*Hart v. Massanari*
  266 F.3d 1155 (9th Cir. 2001)............................................................18

*Heyne v. Caruso*
  66 F.3d 1475 (9th Cir. 1995)............................................................22

*Icahn Sch. of Med. at Mount Sinai*
  2014 WL 2002992 (N.L.R.B. Feb. 25, 2014) ......................................12

*Intertec Contracting A/S Intertec (Gibraltara) Ltd. v. Turner Steiner Int'l*
  No. 98 Civ. 9116(CSH), 2001 WL 81224 (S.D.N.Y. Jul. 18, 2001) .............23

*J.C. Penney Corp., Inc.*
  347 N.L.R.B. 127 (2006) ................................................................12

*Jauhari v. Sacred Heart Univ., Inc.*
  No. 3:16CV00680(AWT), 2017 WL 819902 (D. Conn. Mar. 02, 2017) ....................................................................................22

*Laborers & Hod Carriers Local No. 341 v. NLRB*
  564 F.2d 834 (9th Cir. 1977)............................................................9

*Lakeland Health Care Associates, LLC v. NLRB*
  696 F.3d 1332 (11th Cir. 2012)..........................................................9

*Landis v. North American Co.*
  299 U.S. 248 (1936) ..................................................................18, 22

iii

*Lockyer v. Mirant Corp.*
  398 F.3d 1098 (9th Cir. 2005)..........................................................................22

*Loparex LLC v. NLRB*
  591 F.3d 540 (7th Cir. 2009)............................................................................8

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*
  No. 5:16-cv-02805-EJD, 2017 WL 2727874 (N.D. Cal. Feb. 14,
  2017) ...........................................................................................................22, 23

*Manrique v. United States*
  137 S. Ct. 1266 (2017) ...................................................................................19

*Manuel v. City of Joliet*
  137 S. Ct. 911 (2017) .....................................................................................19

*McElrath v. Uber Techs., Inc.*
  No. 16-cv-072411-JSC, 2017 1175591 (N.D. Cal. Mar. 30, 2017) ...............18

*Morris v. Ernst & Young, LLP*
  834 F.3d 975 (9th Cir. 2016)...................................................................... passim

*Mundi v. Union Security Life Insurance Co.*
  No. CV-F-06-1493 OWW/TAG, 2007 WL 2385069 (E.D. Cal.
  Aug. 17, 2007) ...........................................................................................20, 21

*N. Montana Health Care Ctr. v. NLRB*
  178 F.3d 1089 (9th Cir. 1999), *amended*, (9th Cir. 1999) ............................10

*Nagrampa v. MailCoups, Inc.*
  469 F.3d 1257 (9th Cir. 2006)........................................................................14

*NLRB v. GranCare, Inc.*
  170 F.3d 662 (7th Cir. 1999)............................................................................7

*NLRB v. Kentucky River Cmty. Care, Inc.*
  532 U.S. 706 (2001) .........................................................................................3

*NLRB v. Missouri Red Quarries, Inc.*
  853 F.3d 920 (8th Cir. 2017)..........................................................................11

*NLRB v. Town & Country Elec., Inc.*
  516 U.S. 85 (1995) ...........................................................................................3

*Oakwood Healthcare, Inc.*
  348 N.L.R.B. 686 (2006) ........................................................................ passim

*Ocasio v. United States*
  136 S. Ct. 1423 (2016) ...................................................................................19

*Pataky v. Brigantine, Inc.*
  No. 3:17-cv-00352, 2017 WL 1682681 (S.D. Cal. May 3, 2017)...................19

*Phelps Cmty. Med. Ctr.*
  295 N.L.R.B. 486 (1989) ..................................................................................4

*Piekarski v. Amedisys Illinois, LLC*
  No. 12-CV-7346, 2013 WL 2357536 (N.D. Ill. May 28, 2013) .....................20

*Rittman v. Amazon.com, Inc.*
  No. C16-1554-JCC, 2017 WL 1079926 (W.D. Wash. Mar. 22,
  2017) ...............................................................................................................18

*Rivera v. Saul Chevrolet, Inc.*
  No. 16-CV-05966-LHK, 2017 WL 1862509 (N.D. Cal. May 9,
  2017) ......................................................................................................2, 17, 20

iv

*Rochelle Waste Disposal, LLC v. NLRB*
   673 F.3d 587 (7th Cir. 2012)................................................................9

*Ross v. P.J. Pizza San Diego, LLC*
   No. 3:16-cv-02330-L-JMA, 2017 WL 1957584 (S.D. Cal. May 11,
   2017) ................................................................................................18

*Securitas Critical Infrastructure Servs., Inc. v. NLRB*
   817 F.3d 1074 (8th Cir. 2016)............................................................6

*Sessions v. Morales-Santana*
   137 S.Ct. 1678 (2017).....................................................................19

*Simula, Inc. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999)...........................................................20

*Stiener v. Apple Computer, Inc.*
   No. C 07-4486 SBA, 2007 WL 4219388 (N.D. Cal. Nov. 29, 2007) ........22, 23

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
   559 U.S. 662 (2010) .........................................................................2

*The Republican Co.*
   361 N.L.R.B. No. 15, 2014 WL 3887221 (2014) ............................4

*United States v. Bustos*
   No. 1:08-CR-297-LJO-3, 2016 WL 6821853 (E.D. Cal. Nov. 17,
   2016) ................................................................................................18

*United States v. Cortez-Ruiz*
   No. 15-CR-00114-LHK, 2016 WL 7034057 (N.D. Cal. Dec. 2,
   2016) ................................................................................................17

*Whitworth v. Solar City Corp.*
   No. 16-cv-01540-JSC, 2017 WL 2081155 (N.D. Cal. May 15,
   2017) ..........................................................................................18, 24

*Williams v. U.S. Env't Srvcs, LLC*
   No. 15-168-RLB, 2016 WL 617447  (M.D. La. Feb. 16, 2016) ....................22

*Yong v. I.N.S.*
   208 F.3d 1116 (9th Cir. 2000)..............................................17, 18, 25

**STATE CASES**

*Ajamian v. CantorCO2e, L.P.*
   203 Cal. App. 4th 771 (2012)......................................................14, 17

*Dotson v. Amgen, Inc.*
   181 Cal. App. 4th 975 (2010).........................................................15

*Fittante v. Palm Springs Motors, Inc.*
   105 Cal. App. 4th 708 (2003).........................................................15

*Kashani v. Tsann Kuen China Enter. Co.*
   118 Cal. App. 4th 531 (2004).........................................................16

*Lane v. Francis Capital Mgmt. LLC*
   224 Cal. App. 4th 676 (2014).........................................................15

*Little v. Auto Stiegler, Inc.*
   29 Cal. 4th 1064 (2003) .................................................................16

*Martinez v. Master Prot. Corp.*
   118 Cal. App. 4th 107 (2004).........................................................14

*Peng v. First Republic Bank*
    219 Cal. App. 4th 1462 (2013), as modified (Oct. 2, 2013) ............................15

*Pinela v. Neiman Marcus Grp., Inc.*
    238 Cal. App. 4th 227 (2015), *reh'g denied* (July 29, 2015), *review
    denied* (Sept. 16, 2015) ......................................................................................16

*Samaniego v. Empire Today LLC*
    205 Cal. App. 4th 1138 (2012)..........................................................................16

**FEDERAL STATUTES**

29 U.S.C. § 151 et seq. ................................................................................ passim

29 U.S.C. § 152(11) ...........................................................................................4

29 U.S.C. § 152(3) .............................................................................................3

29 U.S.C. § 216 .................................................................................19, 20, 24

29 U.S.C. § 216(b) ...........................................................................................19

29 U.S.C. § 256 ................................................................................................19

9 U.S.C. § 2 ......................................................................................................14

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ......................................................................24

Cal. Lab. Code § 1197.5 ..................................................................................24

**FEDERAL RULES**

Fed. R. Civ. P. 16 .............................................................................................23

Fed. R. Civ. P. 23 .............................................................................................24

Fed. R. Civ. P. 26(d)(2).....................................................................................23

Fed. R. Civ. P. 26(f) .........................................................................................23

## I.    INTRODUCTION

Steptoe & Johnson LLP ("Defendant" or "Steptoe") wishes *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016) ("*Morris*") was not the law in the Ninth Circuit.  It would like to pretend that junior associates are not covered by the National Labor Relation Act ("NLRA").  It would rather not have its pay practices put under the microscope.  It would prefer this whole matter be conducted in secret, before a private judge of its choosing, away from the recent spotlight that has been shined on law firms who pay women attorneys less for the same work than men.

Unfortunately for Steptoe, *Morris* is the law, and this Court has no authority to disregard it.  The protections offered by the NLRA cover young lawyers, and this matter should not be relegated to a secret proceeding, or shelved for any period.

Instead, this case—brought on behalf of all the women who have been shortchanged while working hard for Steptoe and its corporate clients as contract attorneys and associates—should proceed, without further delay, in federal court.

If Steptoe is so certain that Ms. Houck's claims that a gender pay gap exists are baseless, then why is it afraid to litigate those claims in a public forum?

Steptoe's Motion to Compel Arbitration, Dismiss the Complaint and Stay Action ("Motion") (Docket No. 16) should be denied.

## II.   ARGUMENT

### A.    The Arbitration Agreement is Unenforceable Pursuant to *Morris.*

The Ninth Circuit has declared that the rights established by the NLRA, including "the right of employees to pursue legal claims together," are substantive and "the FAA does not mandate the enforcement of a contract that alleges their waiver."  *Morris*, 834 F.3d at 986.  In an employment contract, a "clause [that] prevents concerted activity by employees in arbitration proceedings, and [requires] that employees only use arbitration prevents the initiation of concerted legal action anywhere else," and is unenforceable.  *Id.* at 983–84.

1

1   Plaintiff Houck has a substantive right to a forum in which she can "pursue
2   concerted work-related legal claims."  *Id.* at 983.  But the employment contract
3   Plaintiff signed contains an arbitration provision that prohibits Plaintiff Houck from
4   pursuing her claims collectively in an arbitral forum, and purports to preclude her
5   from bringing ***any*** claims in a judicial forum.  *See* Declaration of Linda G.
6   Rosensweig ("Rosensweig Declaration" or "Rosensweig Decl.") (Docket No. 18),
7   Ex. A §7 ("The Agreement").  As Defendant summarizes, the "Agreement here
8   specifically rejects class arbitration."  Motion, p. 11, n.4.  By doing so, the
9   Agreement purports to leave Plaintiff Houck with ***no forum*** to pursue her
10  grievances collectively.  Accordingly, this Court cannot enforce the collective
11  action waiver.  *See Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017
12  WL 1862509, at *4 (N.D. Cal. May 9, 2017) (applying *Morris* and denying motion
13  to compel arbitration in collective action).

14  The Court also cannot rewrite the Agreement to provide for class arbitration,
15  because a party may not be compelled to "submit to class arbitration unless there is
16  a contractual basis for concluding that the party agreed to do so."  *Stolt-Nielsen S.A.*
17  *v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

18  Because the Court cannot order Plaintiff to arbitrate her claims individually
19  under the Ninth Circuit's controlling authority, Plaintiff ***must*** be permitted to bring
20  her collective action claims in this Court.

21  **B.**    **Plaintiff Houck Is Entitled to the Protections of the NLRA.**

22  Because a straightforward application of *Morris* invalidates the Agreement's
23  class action waiver, Defendant tries to characterize Ms. Houck's employment as
24  that of a "supervisor" in an attempt to deprive her of the NLRA's protection.
25  Motion, pp. 11–16.  But Plaintiff Houck was not a supervisory employee.  As a
26  contract attorney, and then as an associate, Ms. Houck worked alongside secretaries
27  and paralegals ***in support of supervising partners***.  Declaration of Ji-In Houck
28  ("Houck Decl."), ¶9.  Ms. Houck did not have any authority "responsibly to direct,"

2

1  to effectively hire, or to effectively fire, secretaries and paralegals, or anyone else at
2  the firm.  Ms. Houck's relaying the priorities and tasks of partners to secretaries and
3  paralegals are not directions that rise above a routine or clerical nature.  Similarly,
4  Defendant's attempt to convert the feedback solicited from Ms. Houck into
5  authority over her coworkers strains the facts and the law.  Finally, Ms. Houck's
6  participation in two "screening" interviews is legally insufficient to constitute
7  supervisory authority to hire.  It is Defendant's burden to establish facts that put
8  Plaintiff Houck outside the NLRA's broad scope.  Defendant has failed to meet it.

9          **1.    Defendant Has Not Met Its Burden to Show Plaintiff Houck Is a Supervisor Under the NLRA.**
10

11          The substantive rights of the NLRA—one of which under *Morris* is the right
12  to resolve employment disputes in a class action—apply to all "employees" who are
13  covered by the NLRA.  The NLRA's definition of "employee" "'reiterate[s] the
14  ***breadth*** of the ordinary dictionary definition' of that term, so that it includes '***any***
15  ***person*** who works for another in return for financial or other compensation,'" and
16  the "burden of proving the applicability of the supervisory exception" is placed "on
17  the party asserting it."  *NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706,
18  711 (2001) (emphasis added) (quoting *NLRB v. Town & Country Elec., Inc.*, 516
19  U.S. 85, 90 (1995)).  "Deciding whether an individual is a supervisor is a highly
20  fact intensive inquiry."  *Frenchtown Acquisition Co. v. NLRB*, 683 F.3d 298, 305
21  (6th Cir. 2012) (quotation marks omitted).
22          The term "employee" excludes "any individual employed as a supervisor."
23  29 U.S.C. § 152(3).
24          A "supervisor" is:
25          any individual having authority, in the interest of the employer, to
26          hire, transfer, suspend, lay off, recall, promote, discharge, assign,
27          reward, or discipline other employees, or responsibly to direct
28          them, or to adjust their grievances, or effectively to recommend

such action, if in connection with the foregoing the exercise of

such authority is not of a merely routine or clerical nature, but

requires the use of independent judgment.

29 U.S.C. § 152(11). But for an employee to be considered a supervisor under the statute, he or she must (1) have the "authority to exercise (or effectively recommend the exercise of) at least one of" the above functions, (2) the authority must be held in the "interest of the employer," and (3) the authority must be "exercised neither routinely nor in a clerical fashion but with independent judgment." *Oakwood Healthcare, Inc.*, 348 N.L.R.B. 686, 688 (2006) ("*Oakwood Healthcare*"). "[P]urely conclusory evidence is not sufficient to establish supervisory status; instead, the [National Labor Relations] Board requires evidence that the employee ***actually possesses*** the [supervisory] authority at issue." *Beverly Enters.-Minn., Inc.*, 348 N.L.R.B. 727, 731 (2006) (emphasis added).[1] And "[s]upervisory status is not proven where the record evidence 'is in conflict or otherwise inconclusive.'" *The Republican Co.*, 361 N.L.R.B. No. 15, 2014 WL 3887221, *7 (2014) (quoting *Phelps Cmty. Med. Ctr.*, 295 N.L.R.B. 486, 490 (1989)); *see also Avante at Wilson, Inc.*, 348 N.L.R.B. 1056, 1057 (2006) (finding "testimony [that] is utterly lacking in specificity" does not meet the burden of determining supervisory status).

Defendant contends that Plaintiff Houck had the authority responsibly to direct, hire, and fire secretaries and paralegals in a mega-firm employing over 400 lawyers. Motion, pp. 12–16. But the vague and purely conclusory evidence Defendant cites does not support this point. In fact, Ms. Houck interacted with secretaries and paralegals to relay the priorities and carry out the objectives of her supervising partners. Defendant has not shown that Plaintiff Houck was held responsible for the errors of secretaries or paralegals she worked with, had authority

---

[1] "Considerable deference … attaches to the [National Labor Relations] Board's interpretation of the NLRA." *Morris*, 834 F.3d at 980.

4

to discipline them, or had authority to hire anyone.  Indeed, Ms. Houck worked as a contract attorney, and later, an associate attorney, and did not and could not exercise any supervisory duties, in contrast to, for example, a Director of Office Administration for the firm.  Compare Houck Decl., ¶10 (describing routine clerical interactions) with Rosensweig Decl., ¶4 ("As the … Director of Office Administration, I was in charge of . . . hiring all of the office's support staff (such as secretaries and paralegals), assisting with attorney recruiting, [and] overseeing the office's accounting and facilities management operations.").  In fact, it was Rosensweig who was responsible for "performance management (including discipline and termination) for support staff," who "determin[ed] the compensation of secretaries," and who was "responsible for handling secretary discipline issues—such as investigating allegations of misconduct along with the Firm's Human Resources department and making and delivering final disciplinary decisions." Rosensweig Decl., ¶¶4, 13, and 15.

## 2. Plaintiff Houck Did Not Have the Authority Responsibly to Direct Secretaries or Paralegals.

Defendant first contends that Plaintiff Houck had the authority "responsibly to direct" secretaries and paralegals.  Motion, p. 13.

### a) Defendant's Conclusory Affidavit Does Not Demonstrate Plaintiff Houck Had Authority Responsibly to Direct.

In support of its assertion, Defendant points to a declaration which states in conclusory fashion that she had the authority to "direct the work of" her secretary. Motion, p. 13; Rosensweig Decl., ¶12.  However, "general, conclusory testimony that employees have supervisory responsibilities is not sufficient to satisfy [the party asserting an employee is a supervisor]'s burden of proof."  *Frenchtown Acquisition Co.*, 683 F.3d at 307.  And, "an individual's assignment or responsible direction of another [can] be based on independent judgment within the dictionary definitions of those terms, but still not rise above the merely routine or clerical."

5

1     *Oakwood Healthcare*, 348 N.L.R.B. 686, 693 (2006).  Here, Plaintiff Houck and

2     the Court are left to guess what interactions with her coworkers constituted

3     "direction" in Defendant's eyes.  Without specificity, Defendant failed to show how

4     such interactions were anything other than merely routine or clerical, as *Oakwood*

5     *Healthcare* requires.  *See Securitas Critical Infrastructure Servs., Inc. v. NLRB*, 817

6     F.3d 1074, 1079 (8th Cir. 2016) (An employer who has the "opportunity to offer

7     specific examples of independent judgment, but fails to do so, is determined not to

8     have carried its burden of proving supervisory status.").

9

10            **b)**      **The Evidence Defendant Cites Shows That Plaintiff Houck's Purported Supervisory Interactions Lacked Independent Judgment.**

11       Behavior of a putative supervisor that is dictated or controlled by detailed

12     instructions of a higher authority do not constitute "independent judgment."

13     *Oakwood Healthcare*, 348 N.L.R.B. at 693.  But Plaintiff Houck's interactions with

14     secretaries involved relaying the priorities and carrying out the instructions of

15     partners, and thus did not involve the use of independent judgment.  *See* Houck

16     Decl., ¶9.

17       First, Defendant attempts to rely on instances where Ms. Houck requested

18     paralegal and secretarial coverage outside of regular working hours to argue she is a

19     supervisor.  But Plaintiff Houck only requested paralegal or secretarial coverage

20     outside of regular working hours pursuant to the direction of a supervising partner.

21     Houck Decl., ¶14.  Even if Plaintiff Houck did use independent judgment to request

22     coverage outside of regular working hours, it is not enough to show that an

23     employee can request others work late, rather "the party seeking to establish

24     supervisory authority must show that the putative supervisor has the ability to

25     ***require*** that a certain action be taken; supervisory authority is not established where

26     the putative supervisor has the authority merely to ***request*** that a certain action be

27     taken."  *Beverly Enters.-Minn.*, 348 N.L.R.B. at 729 (emphasis in original) (finding

28     charge nurses who occasionally requested nursing assistants to stay past the end of

OPP. TO MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS COMPLAINT AND STAY ACTION

1    their shifts or come in to work were not statutory supervisors).  Because Plaintiff

2    Houck lacked the authority to unilaterally alter the working hours of secretaries and

3    paralegals, any request to work outside of normal hours is not evidence that she had

4    authority responsibly to direct.

5         Next, in support of its argument that Plaintiff Houck had authority

6    "responsibly to direct" others, Defendant points to Plaintiff being "assigned" a

7    personal secretary.  Defendant neglects to mention that two of the secretaries that

8    Defendant contends were "assigned" to Ms. Houck primarily worked on bankruptcy

9    matters, while Ms. Houck was a civil litigator.  Houck Decl., ¶¶3, 5–6.  The

10   secretaries Steptoe purported to "assign" to Plaintiff were also "assigned" to other

11   attorneys, including partners on whose cases Ms. Houck was assisting.  *Id.*, ¶¶5–8.

12   Although Steptoe did not offer evidence of its attorney-to-secretary ratios, if all the

13   attorneys that were "assigned" each of the secretaries that Ms. Houck had

14   "assigned" to her were also supervisors, there would be a supervisor to employee

15   ratio of over 3:1.  *See Id.* (describing at least two other attorneys "assigned" each

16   secretary that was "assigned" to Plaintiff Houck).  A 3:1 supervisor to employee

17   ratio is "a highly improbable ratio of bosses to drones."  *NLRB v. GranCare, Inc.*,

18   170 F.3d 662, 667 (7th Cir. 1999) (describing ratio of 59 supervisors to 90

19   employees); *see also Frenchtown*, 683 F.3d at 316 ("If charge nurses were

20   supervisors, then there would be more supervisors than employees.  Such a result

21   stands at odds with reason.").

22        Because Defendant has failed to **carry its burden to show** Plaintiff Houck

23   had responsibility to direct the paralegals and secretaries she worked alongside, the

24   Court cannot conclude that Plaintiff Houck was a supervisory employee.

25        c)    **Plaintiff Houck Was Not Accountable for the Actions**
                **of Paralegals or Secretaries.**
26

27        Defendant has failed to show that Plaintiff Houck was accountable for the

28   actions of her coworkers, as is required under *Oakwood Healthcare*.  348 N.L.R.B.

7

OPP. TO MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS COMPLAINT AND STAY ACTION

at 388.  "[T]he person directing and performing the oversight of the employee must be accountable for the performance of the task by the other, such that some adverse consequence may befall the one providing the oversight if the tasks performed by the employee are not performed properly."  *Oakwood Healthcare*, 348 N.L.R.B. at 692.  "In addition to accountability, the Board requires that an employee must have 'authority to take corrective action, if necessary' and be subject to negative consequences for her failure to take such action."  *Loparex LLC v. NLRB*, 591 F.3d 540, 549–50 (7th Cir. 2009) (quoting *Oakwood Healthcare*, 348 N.L.R.B. at 692) (requiring other employee to stay late to finish work does not amount to disciplinary action).

Defendant points to evaluations of Plaintiff Houck on her "supervision and management" in contending that she was accountable for direction of secretaries and paralegals.  Motion, p. 14; Rosensweig Decl. ¶17.  But to show that an employee had authority responsibly to direct requires "***evidence of actual accountability***."  *Beverly Enters.-Minn.*, 348 N.L.R.B. at 731 (emphasis added).  For example, an employer failed to establish that charge nurses were accountable for the actions of nursing assistants, even where the evaluation form for the charge nurses had a category for "Directs [nursing assistants] to ensure quality care, where there was no evidence "that any action, either positive or negative, has been or might be taken as a result of charge nurses' evaluation of this factor."  *Id.*  And "where accountability is predicated on employee evaluations," as Defendant appears to argue, "***there must be evidence*** that a putative supervisor's rating for direction of subordinates may have, either by itself or in combination with other performance factors, an effect on that person's terms and conditions of employment."  *Id.* (emphasis supplied) (evaluation form that rated purported supervisor on direction of others "merely speculative and insufficient to establish accountability").

1    Just because the Defendant labels something as supervisory does not make it

2    so for the purposes of the NLRA, however.  "'[P]aper accountability,'

3    (accountability in name or job description only), is by itself insufficient to establish

4    supervisory authority." *Rochelle Waste Disposal, LLC v. NLRB*, 673 F.3d 587, 596

5    (7th Cir. 2012) (employee with title "landfill supervisor" was not supervisor for

6    NLRA purposes) (quoting *Golden Crest Healthcare Center*, 348 N.L.R.B. 727, 731

7    (2006)).  Rather, accountability turns on "whether the purported supervisor is at risk

8    of suffering adverse consequences for the actual performance ***of others***, not his own

9    performance in overseeing others." *Rochelle Waste Disposal,* 673 F.3d at 596.

10   Evaluations of Plaintiff Houck's interactions with her coworkers demonstrate only

11   that attorneys at Steptoe "are accountable for their own performance or lack thereof,

12   not the performance of others, and consequently [are] insufficient to establish

13   responsible direction." *Entergy Mississippi, Inc.,* 357 N.L.R.B. 2150, 2155–56

14   (2011).

15   Defendant's citation to *Laborers & Hod Carriers Local No. 341 v. NLRB*,

16   564 F.2d 834, 837 (9th Cir. 1977), is instructive of how mere paper accountability

17   for others is insufficient.  Motion, p. 14.  In that case the Ninth Circuit upheld the

18   determination that an employee was not a supervisor even where that employee

19   relayed instructions to his coworkers, adjusted their job duties, kept "the work

20   moving along," and reported to a yard foreman if discipline of another employee

21   was warranted.  *Laborers*, 564 F.2d at 837.  Similarly, Defendant's citation to

22   *Lakeland Health Care Associates, LLC v. NLRB* reveals how much more authority

23   an actual supervisor would have, as the purported supervisors in *Lakeland* could

24   unilaterally suspend or send home other employees.  696 F.3d 1332, 1337 (11th

25   Cir. 2012).  Defendant cannot claim Plaintiff Houck could effectively suspend or

26   send any employee home.

27   Defendant has failed to show ***any*** evidence of Plaintiff Houck suffering

28   adverse consequences for the actions of secretaries or paralegals, and instead has

only demonstrated that Plaintiff was accountable for *her own performance*. Consequently, Plaintiff Houck cannot be found to possess authority "responsibly to direct" her coworkers.

### 3.   Plaintiff Houck Did Not Have Authority to Discipline Secretaries or Paralegals.

Plaintiff Houck has never fired any of Defendant's employees.  Houck Decl., ¶15.  Nor has she ever disciplined any secretaries or paralegals.  Houck Decl., ¶16. Although Defendant claims that Plaintiff completed performance evaluations required of her, "[h]aving a role as witnesses, or reporters of fact, within a disciplinary process is legally insufficient to establish the effective exercise of disciplinary authority." *Allied Aviation Serv. Co. of New Jersey v. NLRB*, 854 F.3d 55, 65 (D.C. Cir. 2017) (employees who had the discretion to report misconduct to higher-ups who made disciplinary decisions not supervisors).  Defendant's evidence that Plaintiff Houck completed employee evaluations required of her merely demonstrates that she performed "a reporting function, not that their opinions had any demonstrable effect on fellow employees' pay, benefits, or retention." *N. Montana Health Care Ctr. v. NLRB*, 178 F.3d 1089, 1095 (9th Cir. 1999), *amended*, (9th Cir. 1999).

Defendant appears to concede that Plaintiff Houck has never effectively recommended discipline of a secretary or paralegal by arguing that the failure to exercise such authority "does not mean she lacked this authority."  Motion, p.14. But absent exercise, there must be other affirmative indications of authority. "Statements by management purporting to confer authority do not alone suffice." *Beverly Enters.-Mass., Inc. v. NLRB*, 165 F.3d 960, 963 (D.C. Cir. 1999); *see also Chevron, U.S.A., Inc.*, 309 N.L.R.B. 59, 69 (1992) (no weight given to "job descriptions that attribute supervisory authority where there is no independent evidence of its possession or exercise"); *Advanced Mining Grp.*, 260 N.L.R.B. 486, 507 (1982) ("What is relevant is the actual authority possessed not the conclusory

10

1  assertions of a company's officials.").  Defendant's citation to *Beverly Enterprises-*

2  *Massachusetts, Inc.* is particularly illustrative, as there the court upheld a finding

3  that management encouraging charge nurses to "independently discipline" nursing

4  assistants in training sessions and performance reviews did ***not*** demonstrate

5  supervisory authority where the only evidence of disciplinary incidents involved

6  reporting nursing assistants to management.  165 F.3d at 963.

7       Defendant has failed to show that Plaintiff Houck recommended the

8  discharge of anyone, let alone that such recommendation would be effective.

9             **4.    Plaintiff Houck Did Not Have Authority to Hire.**

10       Citing no authority, Defendant contends that Plaintiff Houck's participation

11  in "screening interviews" constitutes authority to hire.  Motion, p. 15; Rosensweig

12  Decl., ¶18.  That Defendant contends Ms. Houck provided a recommendation as

13  required of attorneys conducting screening interviews is of no import, because

14  Plaintiff Houck's feedback on any candidates was submitted to superiors who made

15  the decision to hire based on their own evaluation of the potential candidates, and,

16  presumably, in consultation with other partners.[2]  The "authority effectively to

17  recommend generally means that the recommended action is taken ***without***

18  ***independent investigation by superiors***."  *NLRB v. Missouri Red Quarries, Inc.*,

19  853 F.3d 920, 926 (8th Cir. 2017) (emphasis in original) (finding employee had

20  authority where employer "did not conduct any sort of independent investigation"

21  into hiring candidates); *see Frenchtown Acquisition Co.*, 683 F.3d at 310 (Charge

22  nurses lacked authority to hire where their "involvement in the hiring process is

23  limited to interviewing candidates when managers are too busy, an occurrence

24  which has happened only a few times.").  Indeed, "[t]he power to effectively

25  recommend a hire, … contemplates more than the mere screening of applications or

26

27  [2] Compare Plaintiff's peripheral involvement with Ms. Rosensweig's declaration
   that it is she who "was in charge of … hiring all of the office's support staff (such
28  as secretaries and paralegals)."  Rosensweig Decl., ¶4.

OPP. TO MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS COMPLAINT AND STAY ACTION

other ministerial participation in the interview and hiring process." *J.C. Penney Corp., Inc.,* 347 N.L.R.B. 127, 129 (2006).

Defendant contends that it placed "significant weight" on Plaintiff Houck's recommendations for individuals to hire, but such a bald assertion is insufficient to show that she "effectively recommend[ed]" the hire of anyone. *See Icahn Sch. of Med. at Mount Sinai,* 2014 WL 2002992, at *24 (N.L.R.B. Feb. 25, 2014) (where employer testified that it placed "significant weight" on recommendations of promotion or discharge, but provided "no specific evidence to show or substantiate that [such] 'recommendations' have any independent effect," the employer failed to meet its burden to show chief residents were supervisors).

The fact is, Ms. Houck accompanied a partner and another associate for interviews of two attorneys, interviews that were conducted by the partner.  Houck Decl., ¶12.  Plaintiff Houck did not provide a recommendation or formal assessment of either of the interviewed attorneys.  *Id.*  Plaintiff Houck never participated in the interview of a paralegal or secretary.  *Id.,* ¶13.  Ms. Houck's observation of two screening interviews is not authority to hire.  Defendant has not shown that Plaintiff Houck made any recommendations or assessments of employment candidates, nor has Defendant shown that any person was hired on the basis of her recommendation.  Plaintiff Houck did not have authority to hire.

**5.**   **Plaintiff Houck Did Not Devote a Regular and Substantial Portion of Her Work Time to Any Supervisory Functions.**

Even if Defendant could establish that Plaintiff Houck performed occasional supervisory functions, "the legal standard for a supervisory determination is whether the individual spends a regular and substantial portion of his/her work time performing supervisory functions." *Oakwood Healthcare*, 348 N.L.R.B. at 694 (2006).  Defendant contends that it is "irrelevant how frequently the putative supervisor engages in [a] listed [supervisory] function."  Motion, pp. 12–13 (citing *George C. Foss Co. v. NLRB*, 752 F.2d 1407, 1410 (9th Cir. 1985) (employee

12

1  found *not* to be a supervisor where he received daily instructions from superiors

2  and his recommendations for hiring and transfer were not followed)).  But this is

3  contrary to *Oakwood Healthcare*, and other precedent.  *See Gaines Elec. Co.*, *Inc.*

4  *v. Local No. 237.*, 309 N.L.R.B. 1077, 1078 (1992) (where employee spent 15% of

5  his time doing supervisory duties, he was not properly classified as a supervisor).

6       Defendant has not shown that Plaintiff Houck spent a regular and substantial

7  portion of her time performing supervisory functions.  Defendant would be in a

8  position to do so if such were the case, because as an attorney, Ms. Houck kept

9  regular and careful track of how she spent her time.  Houck Decl., ¶18.  Despite

10  reviewing Plaintiff's billing records, Rosensweig Decl., ¶6, Defendant has not

11  provided any evidence as to how much time Plaintiff Houck spent performing

12  purportedly supervisory tasks.  This is because the clear majority of Plaintiff's time

13  was spent doing the legal work of a highly rated associate attorney.  *See* Complaint,

14  ¶¶17, 34.  Defendant has not met its burden to show Plaintiff Houck devoted a

15  regular and substantial portion of her work time to supervisory functions.

16  **6.    This Court Cannot Order Plaintiff Houck to Arbitrate Her**
   **Claims Individually Under Controlling Ninth Circuit**
17  **Precedent.**

18       The Ninth Circuit's decision in *Morris* controls the outcome of this motion:

19  Plaintiff Houck is subject to an agreement purporting to limit her access to any

20  forum to resolve her grievances collectively, and the Ninth Circuit has declared that

21  such an arbitration provision is unenforceable.  Ordering Plaintiff Houck to

22  arbitrate her claims individually would violate Ninth Circuit law as it stands.

23       Defendant's scant and conclusory evidence is insufficient for the Court to

24  conclude in its favor the "highly fact intensive inquiry" that Plaintiff Houck was

25  exempt from the protection of the NLRA as a supervisory employee.  *Frenchtown*

26  *Acquisition Co.*, 683 F.3d at 305.  It is Defendant's burden to show that an

27  exemption from the NLRA applies, and Defendant has not met that burden.  But if

28  the Court is inclined to find that Plaintiff is a supervisory employee and order

13

arbitration, then the Court should send the complaint as it stands, so the arbitrator may have an opportunity to consider the issue on a complete factual record.

### C.    The Arbitration Agreement is Unenforceable Because It Is Unconscionable.

The Agreement to arbitrate is unenforceable because it is permeated with unconscionability.  The Agreement contains both an illegal clause prohibiting Plaintiff Houck from acting collectively and a fee-shifting provision that purports to make her jointly liable for the costs of arbitration.

The FAA's savings clause provides that an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  One such grounds for revocation of a contract is that it is unconscionable.  "An employment arbitration agreement can be considered permeated by unconscionability if it contains more than one unlawful provision." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 803 (2012) (quotation marks omitted) (finding employment contract substantively unconscionable where it unilaterally limited damages remedies and provided for only employer attorneys' fees).

### 1.    The Agreement Is Procedurally Unconscionable.

"The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000) *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  "An arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable." *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114 (2004). "[T]he sophistication of a party, alone, cannot defeat a procedural unconscionability claim." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1283 (9th Cir. 2006).

OPP. TO MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS COMPLAINT AND STAY ACTION

The cases Defendant cites do not negate a finding that an adhesive contract is procedurally unconscionable.  Motion, p. 10, n.2.  In *Peng v. First Republic Bank* the court reiterates that "contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability."  219 Cal. App. 4th 1462 (2013), *as modified* (Oct. 2, 2013).  In *Lane v. Francis Capital Management LLC* the court reiterates that an adhesion contract is unenforceable if it is unconscionable.  224 Cal. App. 4th 676, 689 (2014) (citing *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 723 (2003) (procedural unconscionability is found where "employer was clearly in the superior bargaining position [and p]laintiff had no meaningful choice; he could accept the agreement or forgo employment")).  And in *Dotson v. Amgen, Inc.* the appellate court "agree[d] with the trial court that, under the facts of this case, procedural unconscionability is present only because the offer was presented on a take-it or leave-it basis."  181 Cal. App. 4th 975, 981 (2010).

Plaintiff Houck was required to sign the Agreement as a condition of employment.  The Agreement was presented on a "take it or leave it" basis, and Plaintiff Houck did not have an opportunity to negotiate or alter it.  Houck Decl., ¶19.  Thus, the Agreement was a contract of adhesion and it is at least minimally procedurally unconscionable.

## 2.    The Agreement Is Substantively Unconscionable.

The Agreement explicitly incorporates the "JAMS Comprehensive Arbitration Rules and Procedures," and not the distinct JAMS Employment Rules. Exhibit B to Rosensweig Decl., p. 18–19, ¶7.  The Comprehensive Arbitration Rules and Procedures provide that parties are jointly and severally liable for the payment of JAMS fees and that each party must pay a *pro rata* share unless otherwise agreed upon.  *Id.*, p. 34 (Rule 31(c)).  Although the Agreement states that "[t]he Firm will pay the cost of the arbitration," Plaintiff Houck would still be in peril of being held jointly and severally liable for JAMS fees vis-à-vis JAMS.

15

1    Under California law, requiring an employee to bear any type of costs that the

2    employee would not have to pay in court is substantively unconscionable.  *Pinela v.*

3    *Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 254 (2015), *reh'g denied* (July

4    29, 2015), *review denied* (Sept. 16, 2015).

5           The California Supreme Court has held that "when an employer imposes

6    mandatory arbitration as a condition of employment, the arbitration agreement or

7    arbitration process cannot generally require the employee to bear any type of

8    expense that the employee would not be required to bear if he or she were free to

9    bring the action in court."  *Armendariz*, 24 Cal. 4th at 110-11.[3]  Where an

10   employment arbitration agreement "requires the employee to split the arbitrator's

11   fees with [the employer, such a] fee allocation scheme alone would render an

12   arbitration agreement unenforceable."  *Circuit City Stores, Inc. v. Adams*, 279 F.3d

13   889, 894 (9th Cir. 2002) (finding arbitration agreement void where substantively

14   unconscionable provisions pervade the entire contract); *Little v. Auto Stiegler, Inc.*,

15   29 Cal. 4th 1064, 1085 (2003) (holding employer required to pay all costs that are

16   unique to arbitration).  Because the Agreement exposes Plaintiff Houck to liability

17   for all the costs of arbitration, the Agreement is clearly substantively

18   unconscionable.

19          Here the Agreement purports to waive the right of Plaintiff Houck to bring

20   her grievances collectively.  Under *Morris*, "because a substantive federal right is

21   waived by the contract here, it is accurate to characterize its terms as 'illegal.'"  834

22   F.3d at 988.  And under California law, "a violation of federal law is a violation of

23   law for purposes of determining whether or not a contract is unenforceable as

24   contrary to the public policy of California."  *Kashani v. Tsann Kuen China Enter.*

25   *Co.*, 118 Cal. App. 4th 531, 543 (2004).  Because the Agreement is illegal and

26

27   [3] "[A]rbitration agreements remain subject, post-*Concepcion*, to the
     unconscionability analysis employed" in *Armendariz*.  *Samaniego v. Empire Today*
28   *LLC*, 205 Cal. App. 4th 1138, 1150 (2012).

16

1    contrary to the public policy of California, it should be considered highly

2    substantively unconscionable.

3          The contract contains multiple substantively unconscionable provisions

4    because it includes both an illegal class and collective action waiver and purports to

5    make Plaintiff Houck jointly liable for arbitration fees, contrary to California law.

6    Because it contains multiple substantively unconscionable provisions, it is

7    permeated by unconscionability and is thus unenforceable.  *Ajamian.*, 203 Cal.

8    App. 4th at 803.

9          **D.    The Court Has No Authority to Issue a Stay and a Stay Is Not**
            **Warranted in Any Event.**
10

11         Steptoe's request for a stay pending the outcome of *Morris* is untenable.

12   Motion, pp. 17–20.  This case should be allowed to proceed.

13                **1.    The Court Is Bound to Apply *Morris* Without Delay.**

14         As the Ninth Circuit has made abundantly clear: "Once a federal circuit court

15   issues a decision, the district courts within that circuit are ***bound to follow it*** and

16   ***have no authority*** to await a ruling by the Supreme Court before applying the

17   circuit court's decision as binding authority."  *Yong v. I.N.S.,* 208 F.3d 1116, 1119,

18   n.2 (9th Cir. 2000) (emphasis supplied).  Thus, district courts in the Ninth Circuit

19   have denied stays pending Supreme Court review of an issue.  *See Alvarado v.*

20   *United States*, No. CV 16-4411-GW, 2016 WL 6302517, at *5 (C.D. Cal. Oct. 14,

21   2016) (denying stay because "until the Supreme Court rules on these issues, the

22   Court must follow the Ninth Circuit's precedent"); *Rivera*, 2017 WL 1862509, at

23   *5 (denying stay sought after *Morris g*ranted certiorari because a stay "would harm

24   Plaintiff by delaying discovery and the resolution of the disputes at issue in this

25   case"); *United States v. Cortez-Ruiz*, No. 15-CR-00114-LHK, 2016 WL 7034057,

26   at *10 (N.D. Cal. Dec. 2, 2016) (stating that a grant of certiorari "does not relieve

27   this Court of its obligation to follow Ninth Circuit precedent"); *United States v.*

28   *Bustos*, No. 1:08-CR-297-LJO-3, 2016 WL 6821853, at *4, n.3 (E.D. Cal. Nov. 17,

17

2016) (same) (*citing Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)); *Ross v. P.J. Pizza San Diego, LLC*, No. 3:16-cv-02330-L-JMA, 2017 WL 1957584, at *2 (S.D. Cal. May 11, 2017) ("it is hornbook law that this Court is bound by a published Ninth Circuit decision").

In light of *Yong*'s clear precedent, the district court decisions granting stays pending the outcome of *Morris* were wrongly decided.  Motion, p. 19, *citing Campanelli v. ImageFIRST Healthcare Laundry Specialists Inc.*, No. 15-cv-04456-PJH, 2017 WL 2929450 (N.D. Cal. Jul. 10, 2017), *McElrath v. Uber Techs., Inc.*, No. 16-cv-072411-JSC, 2017 1175591 (N.D. Cal. Mar. 30, 2017), *Rittman v. Amazon.com, Inc.,* No. C16-1554-JCC, 2017 WL 1079926 (W.D. Wash. Mar. 22, 2017).  Furthermore, *Campanelli* and *Rittman* are distinguishable.  *Campanelli* involved a more complicated scope than the present case, with multiple pendent state law claims presenting complex choice of law issues.  2017 2929450 at *5. And *Rittman* implicated a separate legal issue on appeal to the Ninth Circuit (in addition to the possible application of *Morris*), further complicating the district court's task.  2017 WL 10799926, at *2.

### 2.   <u>On Balance, a Stay Is Not Warranted.</u>

Even were the Court permitted to stay the case pending the outcome of *Morris*, the balancing test enunciated in *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936) and *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) weighs against a stay.

As an initial matter, any estimate by Steptoe regarding when the Supreme Court will issue its decision in *Morris* is necessarily speculative.  *Whitworth v. Solar City Corp.*, No. 16-cv-01540-JSC, 2017 WL 2081155, at *3 (N.D. Cal. May 15, 2017).[4]  Indeed, many cases heard by the Supreme Court in October are not

---

[4] Moreover, Steptoe's predictions regarding the outcome of *Morris*, Motion, pp. 17–18, are "nothing more than reading tea leaves at this juncture."  *Whitworth*, *infra*, 2017 WL 2081155 at *3.

decided until many months after oral argument.  *See, e.g.*, *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) (U.S. No. 14-9496) (argued Oct. 5, 2016, decided Mar. 21, 2017 [167 days]); *Manrique v. United States*, 137 S. Ct. 1266 (2017) (U.S. No. 15-7520) (argued Oct. 11, 2016, decided Apr. 19, 2017 [190 days]).  In the 2016–2017 term, one case was not decided until ***215 days*** after oral argument.  *See Sessions v. Morales-Santana,* 137 S.Ct. 1678 (2017) (U.S. No. 15-1191) (argued Nov. 9, 2016, decided Jun. 12, 2017).[5]  In any case, the Court should not assume that *Morris* will be decided this year, and, given the uncertainty of the timing of a decision in *Morris*, a stay is not warranted.  *See Echevarria v. Aerotek, Inc.*, No. 16-cv-04041-BLF, 2017 WL 24877, at *3 (N.D. Cal. Jan. 3, 2017) (denying arbitration per *Morris* and holding "this Court would not be inclined to stay litigation of this case for the length of time necessary to permit the Supreme Court to issue a decision on the merits").

Importantly, any delay caused by a stay will materially harm any putative collective action member presently unaware of this lawsuit, as their statutes of limitations were not halted by the filing of this matter.  Under the Fair Labor Standards Act, 29 U.S.C. § 216 ("FLSA")—of which the Equal Pay Act is a part—the statutes of limitations of absent class members continue to run with each passing day.  *See* 29 U.S.C. §§ 216(b), 256.  As such, even a brief stay of litigation necessarily brings with it real prejudice to the absent collective action members, whose claims may be lost by the passage of time.  Recognizing that real prejudice, the district court in *Pataky v. Brigantine, Inc.*, No. 3:17-cv-00352, 2017 WL 1682681 (S.D. Cal. May 3, 2017) recently denied a motion to stay in an FLSA lawsuit under similar circumstances presented here.  *Id*. at *9 (holding "[p]laintiffs

---

[5] The 2015–2016 term also saw long delays between oral argument and decision. *See, e.g.*, *Ocasio v. United States*, 136 S. Ct. 1423 (2016) (U.S. No. 14-361) (argued Oct. 6, 2015, decided May 2, 2016 [209 days]); *Foster v. Chatman*, 136 S. Ct. 1737 (2016) (U.S. No. 14-8349) (argued Nov. 2, 2015, decided May 23, 2016 [203 days]).

OPP. TO MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS COMPLAINT AND STAY ACTION

have shown that they will face damages from the granting of a stay."); *see also Piekarski v. Amedisys Illinois, LLC*, No. 12-CV-7346, 2013 WL 2357536, at *2–3 (N.D. Ill. May 28, 2013) (denying stay in part to accommodate discovery and notice to absent FLSA class members given statute of limitations concerns).

Additionally, a stay will increase the risks that evidence could be lost, and that memories will fade. *See e.g.*, *Bradberry v. T-Mobile U.S.A., Inc.*, No. 06-06567 CW, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007) (holding the risk of lost evidence and the delay in litigation during a stay pending appeal constitute a substantial injury to Plaintiff); *Brenner v. Proctor & Gamble Co.*, No. SACV 16-1093-JLS (JCGx), 2016 WL 8192946, at *10 (C.D. Cal. Oct. 20, 2016) (denying stay in part because of "'risk that witnesses' memories will fade and evidence will become stale.'") (*quoting Blue Cross Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007)).

Further counseling against a stay is the fact that much of the discovery at issue in this case will aid ***both*** this action and any potential arbitration. *Rivera*, 2017 WL 1862509, at *5; *see also Cashon v. Kindred Healthcare Operating, Inc.*, No. 16-cv-04889-RS, 2016 WL 6611031, at *3 (N.D. Cal. Nov. 9, 2016) (denying stay despite the fact that "[l]itigation will force Defendants to spend time and money litigating claims they might otherwise arbitrate.").

Steptoe cites *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002), *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) and *Mundi v. Union Security Life Insurance Co.*, No. CV-F-06-1493 OWW/TAG, 2007 WL 2385069 (E.D. Cal. Aug. 17, 2007) for the dubious proposition that denying a stay in this matter will put "merits" discovery before the issue of arbitrability is resolved. Motion, p. 24. These cases are inapplicable here, however, and are distinguishable to boot. Unlike in *Simula*, Plaintiff Houck is not demanding discovery and a trial on the question of formation of an agreement to arbitrate. The language quoted from *CIGNA* is dicta, and that case involved competing state and

20

federal cases and the complex question of federal abstention: an academic concern not present in this matter. *Id.* at 851. Moreover, *CIGNA* merely states an aphorism that is neither here nor there: if the matter is referred to arbitration, responsibility for discovery lies with the arbitrator. *Id.* at 855. Naturally. The language Defendant quotes from *Mundi* is not spoken by the court. The quoted language is from the advocacy of one of the parties to *Mundi*, and that language is not adopted by the Mundi court. *Id.* at *6. Furthermore, *Mundi* presented a different set of considerations than here, however, since the appeal in question was of the district court's order refusing to compel arbitration in that very case. Id. at *1. *Mundi* is simply not applicable.

In short, Plaintiff is not insisting that discovery must take place prior to a determination of the motion to compel arbitration. Rather, the scope of discovery in this Court will be co-extensive with that in arbitration.

All of the document requests Plaintiff has propounded on Steptoe will need to be responded to, even if Plaintiff Houck is ordered to arbitrate her case.[6] For example, Plaintiff Houck seeks the production of various Human Resources policies (attorney manuals, compensation memos, and other standardized personnel documents). No reasonable arbitrator would prevent the discovery of such basic information in an employment discrimination case. Likewise, the compensation data Plaintiff seeks (for contract attorneys and associates employed by Steptoe in all of its offices over the last four years) is relevant to Plaintiff's claims that she is paid less than males doing the same work. Whether this case is litigated before a judge or an arbitrator, Steptoe will be required to provide such data to Plaintiff, and a stay

---

[6] This would be true even if Plaintiff Houck was ordered to arbitrate on an individual basis. As discussed in Sections II(A)-(C), *supra*, the Court is precluded from ordering that this case be arbitrated on an individual basis. This case is properly brought in federal court and properly styled as a collective action. Neither the Court, nor the parties, need pretend that arbitration would be limited to Plaintiff Houck's individual case in order to properly evaluate whether a stay is appropriate.

21

1    will not prevent that eventuality, only delay it.  Complaints about gender

2    discrimination by other Steptoe attorneys will be produced regardless of whether

3    this case proceeds in a judicial forum or an arbitral one.  Each category of discovery

4    information discussed here is equally applicable to Plaintiff Houck's individual

5    claim as to the representative claims she asserts, and she would be entitled to seek

6    such evidence even in an individual case.  *See Diaz v. AT&T*, 752 F.2d 1356, 1362–

7    63 (9th Cir. 1985) (granting motion to compel statistical data regarding hiring and

8    promotions of other employees in individual race discrimination case); *Heyne v.*

9    *Caruso*, 66 F.3d 1475, 1480–82 (9th Cir. 1995) (holding "me too" complaints

10   admissible in individual sexual harassment case).[7]

11           Given the discovery inevitably required in this dispute (regardless of forum),

12   Steptoe cannot make the requisite "clear case of hardship or inequity in being

13   required to go forward."  *Landis*, 299 U.S. at 255.  Indeed, defending a lawsuit,

14   without more, is insufficient to justify a stay.  *See Bui v. Northop Grumman Sys.,*

15   *Corp.*, No. 15cv1397, 2017 WL 2537232, at *3 (S.D. Cal. Jun. 12, 2017) (*citing*

16   *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)).

17           Steptoe cites *Stiener v. Apple Computer, Inc.*, No. C 07-4486 SBA, 2007 WL

18   4219388 (N.D. Cal. Nov. 29, 2007), *Mahamedi IP Law, LLP v. Paradice & Li,*

19   *LLP*, No. 5:16-cv-02805-EJD, 2017 WL 2727874 (N.D. Cal. Feb. 14, 2017), and

20

21   _____

     [7] District courts around the country are in accord.  *See, e.g., Jauhari v. Sacred*
22   *Heart Univ., Inc.*, No. 3:16CV00680(AWT), 2017 WL 819902, at *4 (D. Conn.
     Mar. 02, 2017) (requiring production of information regarding male comparators in
23   individual discrimination case); *Williams v. U.S. Env't Srvcs, LLC*, No. 15-168-
     RLB, 2016 WL 617447, at *7 (M.D. La. Feb. 16, 2016) (holding individual
24   discrimination plaintiff entitled to discover sex-based discrimination complaints
     made by others); *Culloty v. Union Pac. R.R. Co.*, No. C 08-3561 SI, 2009 WL
25   1690520, at *2 (N.D. Cal. Jun. 16, 2009) (holding statistical data relevant to
     individual claim of gender discrimination); *Bolton v. Sprint/United Mgmt. Co.*, No.
26   05-2361-JWL, 2007 WL 756644, at *2 (D. Kan. Mar. 8, 2007) ("[E]ven in an
     individual discrimination case, discovery on a company-wide basis may be
27   appropriate.").
28

                                        22
         OPP. TO MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS COMPLAINT AND STAY ACTION

1   *Intertec Contracting A/S Intertec (Gibraltara) Ltd. v. Turner Steiner International*,

2   No. 98 Civ. 9116(CSH), 2001 WL 81224 (S.D.N.Y. Jul. 18, 2001), for the

3   proposition that district courts have, on occasion, briefly stayed discovery pending

4   the resolution of motions to compel arbitration.  Motion, p. 23.  These cases are not

5   applicable to the present case since the Court here has yet to set a Rule 16

6   Conference and, accordingly, the parties have not yet scheduled a Rule 26(f) meet

7   and confer session.  Until those events have transpired, discovery in this matter is

8   not yet open (although Plaintiff Houck has, as a courtesy (and properly), delivered

9   initial discovery to Steptoe's counsel pursuant to the new Rule 26(d)(2)).  *Stiener*,

10  *Mahamedi* and *Intertec* are thus inapplicable.

11        Finally, public policy favors timely resolution of Plaintiff's claims and

12  enforcement of the laws protecting workers.  *See Covillo v. Specialty's Café*, No.

13  C  11-00594 DMR, 2012 WL 4953085, at *5 (N.D. Cal. Oct. 17, 2012) (denying

14  motion to stay pending appeal of district court's denial of motion to compel

15  arbitration, and holding "[w]hile mindful of the strong federal policy favoring

16  arbitration, the existence of a federal policy does not necessarily mean that a stay is

17  always in the public interest, particularly given California's own public policy

18  interests in enforcing workers protections."); *Bradberry, infra,* 2007 WL 2221076,

19  at *5 (holding "[a] delay of proceedings will allow any harm to the putative class

20  members to continue, and therefore may materially affect the public interest in

21  vindicating the rights of consumers").

22        As the proponent of a stay, Steptoe bears the burden of demonstrating that a

23  stay is justified.  *See Clinton v. Jones*, 520 U.S. 681, 708 (1997).  For the foregoing

24  reasons, it has failed to do so.

25        **E.    NUMEROSITY**

26        Based on the information included in the Rosensweig Declaration (¶8)

27  regarding numerosity—that only fourteen women worked as contract

28  attorney/associates in California during the class period—Plaintiff does not oppose

1   Steptoe's insistence that the allegations on behalf of the proposed California Class

2   be excised from the Complaint.[8]

3       **F.    NOTICE SHOULD ISSUE.**

4       The Court should order that notice of this lawsuit be sent to the putative class

5   members, including putative class members based in California.

6       Having conceded the issue of numerosity with respect to female contract

7   attorneys and associates in California, any putative class member relying on this

8   here-to-fore representative action, may now need to take legal action if she wishes

9   to protect her rights as they pertain to equal pay. *See Am. Pipe & Constr. Co. v.*

10  *Utah*, 414 U.S. 538, 552–53 (1974) (absent class member statutes of limitation

11  tolled during pendency of a class action).  Notifying each of these fourteen women

12  of this development, and of the fact that this litigation no longer covers any claim

13  she may have under the California Fair Pay Act, would only be fair, and is

14  appropriate in this matter.  *See Hardman v. Tri-Financial, LLC*, No. 09-CV-0081-

15  IEG (AJB), 2010 WL 11508879 (S.D. Cal. Feb. 3, 2010) (recognizing that in some

16  circumstances pre-certification dismissal of class claims warrants notice to the

17  class) (*citing Diaz v. Trust Territory of the Pac. Islands*, 876 F.2d 1401, 1408 (9th

18  Cir. 1989)).[9]

19      In the event the Court determines that this matter should be stayed, notifying

20  putative collective action members of the existence of the lawsuit will "ameliorate

21  the effect of the delay in the action while the class claims are stayed."  *Whitworth*,

22  2017 WL 2081155, at *4 (granting stay in FLSA case, but ordering notice to class

23  members be sent in interim); *see also Bradberry, infra,* 2007 WL 2221076, at *5

24

25  _____

26  [8] To be clear, Plaintiff continues to pursue her own individual claims brought
    pursuant to the California causes of action: California Labor Code § 1197.5 and

27  Business & Professions Code § 17200.

28  [9] Since Rule 23's amendment in 2003, notice of dismissal pre-certification is no
    longer required, but is permissible.

OPP. TO MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS COMPLAINT AND STAY ACTION

1   (recognizing that "putative class members may not be aware of the harm

2   Defendant's actions are allegedly causing them").

3          Plaintiff has prepared a [Proposed] Notice, attached as Exhibit A to the

4   Declaration of Paul Laprairie, submitted herewith.

5   **III.     CONCLUSION**

6          The Ninth Circuit has spoken, and a contract that prohibits "concerted legal

7   action" in any forum is unenforceable. *Morris* at 983–84.  The Court is bound to

8   follow controlling Ninth Circuit precedent. *Yong*, 208 F.3d at 1119, n.2.  And

9   Defendant's conclusory evidence has not satisfied its burden of proof to show an

10  exception to the NLRA's broad coverage. *See Frenchtown Acquisition Co.*, 683

11  F.3d at 307.

12         For the foregoing reasons, the Motion should be denied.

13

14  DATE:  August 21, 2017                    ANDRUS ANDERSON LLP

15                                            By:  ___*/s/ Lori E. Andrus*___
16                                                    Lori E. Andrus

17                                            Lori E. Andrus (SBN 205816)
18                                            lori@andrusanderson.com
                                              Paul Laprairie (SBN 312956)
19                                            paul.laprairie@andrusanderson.com
20                                            ANDRUS ANDERSON LLP
                                              155 Montgomery Street, Suite 900
21                                            San Francisco, CA  94104
22                                            Telephone: (415) 986-1400
                                              Facsimile:  (415) 986-1474
23
24                                            *Attorneys for Plaintiff*

25

26

27

28