1  LORI E. ANDRUS (SBN 205816)
2  lori@andrusanderson.com
   PAUL LAPRAIRIE (SBN 312956)
3  paul.laprairie@andrusanderson.com
4  ANDRUS ANDERSON LLP
   155 Montgomery Street, Suite 900
5  San Francisco, CA  94104
6  Telephone:  (415) 986-1400
   Facsimile:   (415) 986-1474
7
8  *Attorneys for Plaintiff Ji-In Houck*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JI-IN HOUCK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STEPTOE & JOHNSON LLP,<br><br>Defendant. | Case No: 2:17-cv-04595-ODW-AFM<br><br>**CLASS ACTION**<br><br>**DECLARATION OF JI-IN HOUCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS THE COMPLAINT, AND STAY ACTION**<br><br>Judge:   Hon. Otis D. Wright II<br>Date:    September 11, 2017<br>Time:    1:30 p.m.<br>Courtroom: 5D, 5th Floor |

DECLARATION OF JI-IN HOUCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS THE COMPLAINT, AND STAY ACTION

Case No. 5:15-CV-01913-LHK

I, Ji-In Houck, declare as follows:

1. I was employed by Steptoe & Johnson LLP ("Steptoe") from May 2013 until March 2016 at Steptoe's Century City Office. I held the title of "contract attorney" until June 2014, when I was given the title of "associate."

2. I am licensed to practice law in California, and have been since December 2011.

3. My practice primarily focused on civil litigation while employed at Steptoe.

4. During my employment at Steptoe, I was informed that four different secretaries were "assigned" to me. However, these assignments did not affect the majority of my professional interactions with secretaries, because my day-to-day professional interactions primarily consisted of working with whichever secretary was supporting the partner responsible for the matter I was working on.

5. The first secretary Linda Rosensweig told me was "assigned" to me was Aja Shelton. Ms. Shelton was "assigned" to at least two other attorneys. Initially, Ms. Shelton primarily worked on bankruptcy matters and had no significant experience in civil litigation. I do not practice bankruptcy law. Ms. Shelton's desk was located next to the two bankruptcy attorneys she was "assigned" to, while my office was located on the opposite side of the suite from her.

6. The second secretary Linda Rosensweig told me was "assigned" to me was Stephanie Moore. Ms. Moore was "assigned" to at least two other attorneys. Like Ms. Shelton, Ms. Moore primarily worked on bankruptcy matters. In fact, almost immediately after I was told that Ms. Moore was "assigned" to me, I was instructed by Linda Rosensweig not to work with Ms. Moore because the firm had other priorities for her time, including further training her to assist with bankruptcy matters. Like Ms. Shelton, Ms. Moore's desk was located next to the two bankruptcy attorneys she was "assigned" to, while my office was located on the

1
DECLARATION OF JI-IN HOUCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS THE COMPLAINT, AND STAY ACTION

opposite side of the suite from her.  As a result, I had very limited professional interaction with Ms. Moore.

7. The third secretary Linda Rosensweig told me was "assigned" to me was Tonyalyn Hawley.  Ms. Hawley was "assigned" to at least two other attorneys.  Ms. Hawley's desk was situated on the 29th floor, where two of the attorneys she was "assigned" to were located, while mine was on the 28th.

8. The fourth secretary Linda Rosensweig told me was "assigned" to me was Shannon Ramme.  Ms. Ramme was "assigned" to at least three other attorneys.  The desks of the other attorneys and Ms. Ramme's desk were situated on the 29th floor, while mine was on the 28th.

9. During my practice at Steptoe I was always supervised by a partner.  In assisting each partner, I worked with the secretary assigned to him or her to relay the priorities and carry out the partner's objectives.  This was the primary source of my professional interactions with secretaries at Steptoe, and the secretary I interacted with on any particular day varied with the matter I was working on.

10. My professional interactions with secretaries at Steptoe were limited to seeking the secretary's assistance with routine and clerical tasks, including: filings, conference room reservations, ordering food, expenses, booking travel and accommodations, and drafting basic correspondence.  All of these tasks were undertaken in furtherance of the work assigned to me by my partners.

11. My professional interactions with Nicholas Hobbs, a paralegal at Steptoe, were also limited to seeking his assistance with routine and clerical tasks, including assembling trial books, document organization, and checking deposition citations.  All of these tasks were undertaken in furtherance of the work assigned to me by my partners.

12. During my time at Steptoe I was instructed to sit in on screening interviews of two attorney candidates for employment.  In each instance, the

partner(s) primarily conducted the interview. I did not make a recommendation or provide a formal evaluation of either candidate.

13. During my time at Steptoe I do not recall ever participating in an interview for a secretary or paralegal candidate for employment.

14. During my time at Steptoe I never requested the support of a secretary or paralegal outside of normal working hours, except where I was relaying the request of a partner.

15. During my time at Steptoe I never fired or recommended to be fired any staff member.

16. During my time at Steptoe I never recommended disciplinary action for any staff member, nor was I informed that I had the authority to do so. Nor did I ever discipline an employee myself.

17. During my time at Steptoe I never recommended anyone for hire, nor was I informed that I had the authority to do so.

18. During my time at Steptoe I kept careful and regular recordings of my time. The vast majority of my time was spent on substantive legal work.

19. I was presented the letter agreement identified as Exhibit A to the Declaration of Linda Rosensweig as a condition of employment at Steptoe. I did not have an opportunity to negotiate the contents of the letter agreement or modify the terms. I understood that if I did not accept the agreement as presented, I would not be permitted to work.

I declare under penalty of perjury pursuant to the laws of the state of California that the foregoing is true and correct, executed on August 18, 2017 in Los Angeles, California.

_____
Ji-In Houck